EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, and the City of New York, Plaintiffs,

v.

LOCAL 638 et al., Defendants.

LOCAL 28, Third-Party Plaintiff,

v.

NEW YORK STATE DIVISION OF HUMAN RIGHTS, Third-Party Defendant.

LOCAL 28 JOINT APPRENTICESHIP COMMITTEE, Fourth-Party Plaintiff,

v.

NEW YORK STATE DIVISION OF HUMAN RIGHTS, Fourth-Party Defendant.

No. 71 Civ. 2877 (HFW).

United States District Court, S. D. New York.

Nov. 25, 1975.

Paul J. Curran, U.S. Atty., S.D.N.Y. by Taggart D. Adams, Louis G. Corsi, New York City, for plaintiff U.S. Equal Opportunity Commission.

W. Bernard Richland, New York City Corp. Counsel by Beverly Gross and Thomas A. Trimboli, New York City, for plaintiff City of New York.

Sol Bogen, New York City, for defendant Local 28.

Rosenthal & Goldhaber by William Rothberg, Brooklyn, N.Y., for defendant Joint Apprenticeship Committee and Trust.

Louis J. Lefkowitz, Atty. Gen. of N.Y. by Dominic Tuminaro, New York City, for third and fourth-party defendant New York State Div. of Human Rights.

## AFFIRMATIVE ACTION PROGRAM

*Introduction*

1. This Affirmative Action Program ("Program") is adopted pursuant to the Decision and Order dated July 18, 1975 and the Order and Judgment dated August 28, 1975 and entered in this action on September 2, 1975 ("Order and Judgment"). The goal of this Program is to assure that the non-white[1] membership in Local Union No. 28 of the Sheet Metal Workers' International Association ("Local 28") reaches a minimum level of 29% by July 1, 1981; to assure that substantial and regular progress is made toward this goal in each year prior to 1981; and to assure that non-white members of Local 28 and nonwhite apprentices of Local 28 share equitably in all employment opportunities afforded to members of Local 28.

2. For the purpose of reaching the above goal of 29% by July 1, 1981 this Program establishes as interim percentage goals for the non-white membership of Local 28 the following:

| | |
|---|---|
| July 1, 1976 | 10% |
| July 1, 1977 | 13% |
| July 1, 1978 | 16% |
| July 1, 1979 | 20% |
| July 1, 1980 | 24% |

Each of the above percentages shall be measured against the total membership of Local 28 as of each interim goal date respectively and the final goal date. For the purpose of measurement, total membership shall include all journeyman members, all pensioners[2] who have been employed as sheetmetal workers within the last three years, and all members or participants in the Local 28 Apprentice Program ("Apprentice Program"). The parties to this action and the Administrator are to implement this Program so that these interim goals may be attained. The Administrator shall periodically review the progress toward the attainment of these goals and take such action as he is empowered to take under the Order and Judgment to assure their achievement.

3. Admission to Journeyman membership in Local 28 shall be attained only through the following procedures:

a) Successful completion of a 'hands-on' journeyman test administered pursuant to Paragraphs 5–14; or

b) establishment of proof of the required experience in the sheetmetal trade pursuant to Paragraph 15; or

c) successful completion of the Local 28 Apprentice Program; or

d) transfer in accordance with the Sheet Metal Workers' International Union Constitution and Ritual; or

e) organization of non-union shops.

4. Membership in the Apprentice Program shall be obtained only through the following procedures:

---

1. "Non-white" as used in the Program means black and Spanish surnamed individuals.

2. "Pensioner" as used in the Program means any individual who receives benefits from the Local 28 pension program.

a) successful completion of an apprentice aptitude test as set forth in Paragraphs 21–32; or

b) entry with advanced standing as set forth in Paragraphs 33 through 36.

*Admission to Journeyman Status*

5. Under the supervision and with the approval of the Administrator, Local 28 shall administer a 'hands-on' journeyman's test on October 11, 1975 designed to test fairly and in a non-discriminatory manner the skills needed for a journeyman sheet metal worker. This test and its grading shall be in substance the equivalent of the 'hands-on' portion of journeyman's test given by Local 28 in November, 1969 as revised by a sheetmetal expert provided by the plaintiffs or the New York State Division of Human Rights. Disputes as to any proposed revisions shall be resolved by the Administrator. There shall be a filing fee of $25 for this test.

6. Local 28 shall undertake a program of publicity and advertising and prepare, make available, and process applications relating to the October 11, 1975 "hands-on" journeyman's test in accordance with the standards and conditions set forth heretofore by the parties and the Administrator. The administration and grading of the test shall be under the overall supervision of the Administrator and shall be accomplished and recorded in such a manner as to facilitate the professional development and validation of future "hands-on" journeyman's tests.

7. Under the following conditions all persons who receive a passing grade in the test described in Paragraphs 5 and 6, and who are physically fit for sheetmetal work shall be eligible for admission to full journeyman membership in Local 28 as follows:

a) all non-white applicants who receive a passing grade, up to a total of 200 such applicants, shall be admitted to journeyman membership by December 1, 1975 in accordance with and subject to the provisions of Paragraphs 16–18 of the Program. In the event that more than 200 non-white applicants receive a passing grade and elect to exercise their rights to admission to journeyman membership under this Program, the 200 non-whites with the highest grades shall be admitted by December 1, 1975; the remaining non-white applicants shall be admitted in accordance with the provisions of subparagraph (b) of this paragraph;

b) white applicants who receive a passing grade shall be placed on a list and ranked in descending order on the basis of their grades on the examination.

i) white applicants shall be selected for admission in the order of their ranking on the above described list on the basis of a ration to the non-whites admitted pursuant to section (a) of this Paragraph. Said ratio shall be agreed upon by the parties, but in no event shall the ratio be less than one non-white for every white. Such ratio shall be designed with the purpose of implementing the interim goals set forth in Paragraph 2. If the parties cannot agree on a ratio by November 10, 1975 the Administrator shall establish such ratio by November 15, 1975.

ii) all applicants who receive a passing grade but who are not admitted pursuant to subparagraph (a) or section (i) of subparagraph (b) may be ordered admitted to journeyman membership by the Administrator at a time deemed suitable by him. White applicants who have received a passing grade and who are not admitted by March 1, 1976 shall be eligible for a selection priority over other white applicants qualified by the journeyman's test to be held in the Spring of 1976, or subsequent tests. Non-white applicants who have received a passing grade and who are not admitted pursuant to subparagraph (a) shall be admitted by July 1, 1976, if they so elect.

8. Local 28 shall administer a non-discriminatory, "hands-on" journeyman's test under the overall supervision and approval of the administrator in the Spring of 1976 and at least once a year thereafter. The

Administrator after consultation with the parties, may apply to the Court to decrease the frequency of the tests consistent with the requirements of the interim goals set forth in Paragraph 2.

9. The journeyman's "hands-on" tests administered pursuant to Paragraph 8 shall be professionally developed and validated in accordance with EEOC Guidelines. Within a reasonable time before the administration of each test (which shall not be less than four weeks unless good cause is shown), Local 28 shall furnish counsel for the parties and the Administrator with (i) a copy of a report demonstrating the validity of the test and (ii) a copy of the test to be administered, provided that counsel for the parties and the Administrator shall not distribute or disclose the contents of the test to any individual or organization except for the purpose of professional validation thereof.

10. All qualified applicants shall be eligible to take the "hands-on" journeyman test specified in this Program. A qualified applicant is defined as follows: any person who

a) has or will have attained the age of 18 by the date of the test, and

b) is a citizen or a lawful permanent resident alien legally entitled to work in the United States, and

c) has resided in New York City or the counties of Westchester (N.Y.) Nassau (N.Y.) Suffolk (N.Y.), Passaic (N.J.) Bergen (N.J.) Hudson (N.J.) Union (N.J.) or Essex (N.J.) for six (6) months prior to the filing of an application, and

d) has one year of sheet metal work experience including but not limited to employment as a member in any branch of Local 400 of the Sheet Metal Workers International Association, sheet metal experience in the Armed Forces or vocational education or training related to the skills of a journeyman sheet metal worker.

Persons presently registered or recently registered in the Local 28 Apprentice Program or any other recognized apprentice program affiliated with the Sheet Metal Workers' International Association are not eligible.

11. Subject to the approval of the Administrator, Local 28 shall develop a standardized application form for the "hands-on" journeyman's test. Such forms shall include only the following:

a) provisions for the name, address, telephone number, social security number, citizenship or lawful resident alien status, residency, record of convictions, age, sex and race or ethnic identification of the applicant (with a notation that information regarding race or ethnic identification is required solely for the purpose of compliance with the court order herein and the regulations of the United States Equal Employment Opportunity Commission), and previous sheet metal experience.

b) information regarding the eligibility requirements, fee, date, time, location, and nature of the "hands-on" journeyman's test.

12. Local 28 shall make available an application form for the "hands-on" journeyman's test and a short description of the nature of the test in the following manner:

a) at the offices of Local 28;

b) by mail in response to inquiries and requests made by mail;

c) in bulk to plaintiffs, City Department of Employment, the New York State Employment Service, Recruitment and Training Program, Inc., Fight Back, and the other governmental or community agencies listed in Appendix A as amended from time to time.

Completed applications for the test shall be accepted by mail or delivery in person at the offices of Local 28. Local 28 may establish, with the approval of the Administrator, a suitable cut-off date for the acceptance of applications. Local 28 may establish a fee for the taking of the "hands-on" journeyman test consistent with the cost of administering such a test. Such fee

shall be provisionally, $25.00. Local 28 may apply to the Administrator for an increase upon good cause shown. Applicants shall be informed, in writing, as to the place of examination with instructions as to how to reach the place and/or a map indicating its location.

13. The "hands-on" journeyman test shall be graded by a Board of Examiners consisting of three members knowledgeable in Sheet Metal. Said Board shall be comprised of a representative chosen by Local 28, a representative chosen by the Administrator, and a representative chosen by the Plaintiffs and the State Division of Human Rights. Such Board shall act by majority vote. Said Board of Examiners shall employ the passing grade level developed pursuant to the validation procedures set forth in Paragraph 9. All applicants shall be advised of their status by first class mail within 30 days of the test. Non-whites who fail the test shall be advised of their possible eligibility for advanced standing in the apprenticeship program.

14. (a) A qualified non-white applicant who passes the test and is physically fit to perform sheet metal work shall be admitted to journeyman status in Local 28 within 60 days of the test unless the applicant elects to defer admission pursuant to Paragraph 19.

(b) A qualified white applicant who passes the test and is physically fit to perform sheet metal work shall be admitted to journeyman status in Local 28 in accordance with the following procedures:

(i) no later than 30 days prior to the test the parties shall attempt to agree on an appropriate ratio of non-whites to whites to be admitted to journeyman status. This ratio will be established with the purpose of fairly implementing the interim and final goals set forth in Paragraphs 1 and 2 but in no event shall said ratio be less than one non-white for every white. If no agreement is reached by the time specified, the Administrator shall establish the ratio within 15 days thereafter.

(ii) in accordance with the above ratio white applicants shall be admitted on the basis of the highest scores achieved on the "hands-on" journeyman test;

(c) To the best of their ability the parties and the Administrator shall endeavor to set forth on the application form the most accurate estimate of the opportunities available to whites based on the number of preferred candidates pursuant to Paragraph 7(b), the number of expected non-white candidates, and past experience.

15. Commencing January 1, 1976 there shall be established a program for admission to Local 28 journeyman membership of non-whites who have had four years experience obtained in the United States or elsewhere, in sheet metal work or employment reasonably related or similar to sheet metal work, including experience in the Armed Forces, or vocational training related to the skills of a sheet metal worker. Persons eligible for admission under this program must,

a) be a resident of New York City, or the counties of Nassau (N.Y.) Suffolk (N.Y.) Westchester (N.Y.), Bergen (N.J.) Passaic (N.J.) Essex (N.J.) Union (N.J.) or Hudson (N.J.) for six (6) months prior to application; and

b) be age 18 or over; and

c) be physically fit to perform sheet metal work; and

d) establish to the satisfaction of a majority of a board of three members knowledgeable in sheet metal work, comprised of a representative chosen by Local 28, a representative chosen by the Administrator, and a representative chosen by the plaintiffs and the State Division of Human Rights that the applicant has the requisite sheet metal experience; and

e) be a citizen or lawful permanent resident alien legally entitled to work in the United States.

The Administrator, after due consultation with all the parties, shall establish procedures for application to this program, for investigation and verification of the criteria

set forth in subparagraphs (a) through (e), and for the timing and conditions of admission. Appropriate publicity for the program shall be undertaken at the direction and with the approval of the Administrator.

16. (a) Upon proper application, a non-white eligible for admission to journeyman membership in Local 28 pursuant to Paragraphs 5 through 15 or Paragraph 35(e) of this Program may request of Local 28's Executive Board that the Local 28 initiation fee be reduced pursuant to the provisions of Paragraph 22(d) of the Order and Judgment. Within 5 days of receipt of such application, the Local 28 Executive Board shall render a decision on the application in writing and notify the applicant, the Administrator and the parties of the disposition of the application (the notification to the Administrator and the parties shall include the name and address of the applicant). If such application is denied in whole or in part, or is not acted upon within five days of its receipt by the Executive Board of Local 28, an application may be made to the Administrator who shall either grant or deny the request in writing after duly considering all the factors set forth in Paragraph 22(d) of the Order and Judgment. In considering such an application the Administrator may require the submission of such information, documents, or other data from either Local 28 or the applicant as he deems necessary.

(b) Upon proper application a non-white eligible for admission to journeyman membership in Local 28 pursuant to Paragraphs 5 through 15 or Paragraph 35(e) may request of the Local 28 Executive Board that payment of the Local 28 initiation fee commerce with employment and be payable on a pro rated basis, each payment not exceeding 10% of the net check, and payable only during periods of employment until the fee is paid. Within 5 days of the receipt of such application the Local 28 Executive Board shall render a decision on the application in writing and notify the applicant, the Administrator and all parties of the disposition of the application (the notification to the Administrator and the parties shall in-clude the applicant's name and address). If such application is denied in whole or in part or not acted upon within 5 days of its receipt by the Executive Board of Local 28, an application may be made to the Administrator who shall either grant or deny the application in writing. The decisions of the Executive Board of Local 28 and the Administrator shall be made having duly considered the financial circumstances of the applicant.

17. (a) At any time after an application pursuant to Paragraph 16 has been pending with the Administrator for more than 5 days a non-white eligible for admission to journeyman membership in Local 28 pursuant to Paragraph 5 through 15 or Paragraph 35(e) of this Program shall be admitted conditionally to journeyman membership upon payment of $56 dollars and one month's dues pending the determination of the Administrator which shall be made within 30 days of the date of the application to the Administrator. During such conditional membership an applicant will be entitled to all the rights and privileges of regular journeyman membership.

(b) If a conditional member is terminated without becoming a regular journeyman member of Local 28 he shall be entitled to a return of any dues paid in advance for any month in which he was not employed and, if he was not employed during his conditional membership, he shall also be entitled to a return of any payment made toward the initiation fee.

18. The granting of any application pursuant to Paragraph 16 shall not diminish any rights or privileges accruing to journeyman membership in Local 28.

19. A person eligible for admission pursuant to Paragraphs 5 through 14 shall be permitted to defer such admission for up to six months from the time he is first entitled to be admitted. During such period, a person who has elected to defer may apply to the Administrator for further deferral of admission for up to another 12 months. If an applicant invokes his right of deferral he shall be admitted, on the same terms and

conditions as he was previously entitled, within 30 days of written notice to Local 28 that he seeks to be admitted.

20. Local 28 shall issue "permits" or "identification slips" only with the express written consent of the Administrator, and pursuant to Paragraph 22(f) of the Order and Judgment.

### Apprentice Program

21. The Local 28 Joint Apprenticeship Committee ("JAC") shall maintain an apprentice program of four years duration or less. The terms and conditions of the apprentice program shall be as set forth in the Collective Bargaining Agreement ("Standard Form of Union Agreement . . . between Local . . . and Sheet Metal Contractors."), the Local 28 Joint Apprenticeship Trust and Indenture, and the rules and regulations thereunder except where modified by the Order and Judgment, the provisions of this Program, or order of the Administrator pursuant to his powers under the Order and Judgment.

22. The apprentice program shall indenture no less than 300 apprentices by July 1, 1976 of which no less than 100 apprentices shall be indentured by February 2, 1976. No less than 200 apprentices shall be indentured in each year thereafter up to and including 1981. Said numbers shall include those apprentices admitted with advanced standing. The JAC may indenture apprentices in two separate classes during a year.

23. Apprentices shall be assigned for employment in a ratio of not less than one apprentice for every four journeymen working of the aggregate journeymen employed. Seniority shall not be a criterion for employment, and apprentices shall be rotated for employment where necessary and feasible. The JAC shall make every effort to provide apprentices with classroom instruction, including evenings and Saturdays where necessary, during periods of unemployment, and shall credit such hours toward fulfillment of apprenticeship requirements. The JAC may authorize the accelerated advancement or graduation of any apprentice as it deems proper.

24. Upon successful completion of the Apprenticeship Program, apprentices shall be promptly admitted to full journeyman membership upon payment of the balance due of the initiation fee, if any, which upon application to the Local 28 Executive Board, may be paid on an installment basis for good cause shown, and subject to the procedures contained in Paragraph 16.

25. Applications shall be made available to and accepted from any qualified candidate. A qualified candidate is defined as follows: any person who is deemed physically fit for sheet metal work and who has or will have attained the age of 18 years by the date of indenture of the next scheduled apprentice class and who is not older than 25 years of age (for veterans of active military duty the age limit is extended one year for each year of such duty up to the age of 30) and for non-whites not over the age of 35 applying for advanced standing, and who is a citizen or permanent resident alien. For the apprentice aptitude test to be administered in November, 1975 only, JAC may require proof of completion of a tenth grade course of education. The JAC shall validate the tenth grade requirement before said requirement may be imposed for subsequent examinations.

26. With the approval of the Administrator, JAC shall develop a standardized application form for the Apprentice Program. The application form shall include information about the date of the next class of apprentices to be indentured, and shall require only the following information of the applicant:

a) Name, address and telephone number:

b) Birth date and age:

c) Social Security number;

d) Extent of education;

e) Sex;

f) Race or ethnic classification; (with a notation that this information is required solely for the purposes of compliance with federal anti-discriminations statutes);

g) military service;

h) convictions and pending criminal charges.

i) Citizenship or lawful permanent resident alien status.

27. Application forms for the Local 28 JAC Apprentice Program shall be available at the offices of the JAC during normal business hours and at the offices of the organizations listed in Appendix A at least 60 days before an examination. Application forms shall be made available by mail upon written request. Completed applications shall be accepted in person or by mail at the offices of the JAC. There shall be a filing fee of no more than $15.00. Application forms shall be made freely available to any governmental employment office and minority community organizations not listed in Appendix A upon request. The time for filing applications for a particular apprentice test may be closed by the JAC at a reasonable time (not to exceed three weeks) before the date of the examination.

28. An apprentice aptitude test shall be given on December 13, 1975 and at least once yearly thereafter at a date, time and location approved by the Administrator. The test shall consist of the following professionally developed and validated components: (1) a basic "read and follow directions" test designed to ascertain an applicant's ability to master and understand those written and verbal instructions, directions, and other communications necessary to participate in the Apprentice Program at the first year level; and (2) a mechanical comprehension test similar in substance and scope to that mechanical comprehension test administered by JAC in April 1969. There shall be professionally developed and validated a qualifying score on the "read and follow directions" test designed to reflect the minimum ability necessary to participate in the Apprentice Program at the first year level. The JAC may apply to the Administrator to give a math test as part of the apprentice aptitude test, and such test may be given upon good cause shown. Such math test shall be professionally developed and validated as to content and qualifying score in such manner as to reflect the minimum ability necessary to participate in the Apprentice Program at the first year level.

29. Within three weeks of the administration of an apprentice entrance test, JAC shall provide the Administrator and all parties with:

(a) the names, race identification, raw scores and rank of all candidates on all tests; and

(b) the mean and median scores on all tests of all identifiable racial and ethnic groups among the candidates.

30. Persons selected to be indentured as apprentices pursuant to Paragraph 22 shall be selected in accordance with a ratio of non-whites-to-whites which shall be established by agreement of the parties within 30 days prior to the tests, or by the Administrator within 15 days thereafter if the parties fail to agree.[3] This ratio will be established with the purpose of fairly implementing the interim and final goals set forth in Paragraphs 1 and 2 but in no event shall said ratio be less than one to one. For the purpose of assuring that white applicants are accorded an opportunity to be accepted into the Apprentice Program in reasonable numbers, the parties and the Administrator shall use their best efforts to assure that the total population of the program shall not exceed 60% non-white individuals, and that an individual term or class shall not exceed 70% non-white individuals.

31. In fulfillment of JAC's and Local 28's obligations under Paragraphs 22 and 30, apprentices chosen means of the apprenticeship entrance test shall be selected from those who meet or exceed the qualifying score on the "read and follow directions" test in the following manner:

(a) the white apprentices shall be selected on the basis of the highest scores

---

**3.** The parties shall agree by November 14, 1975, what the ratio shall be for the classes to be indentured in February and June 1976. If no agreement is reached, the Administrator shall establish the ratio by November 21, 1975.

received on the mechanical comprehension test among the white eligible qualified candidates;

(b) the non-white apprentices shall be selected on the basis of the highest scores received on the mechanical comprehension test among non-white eligible qualified candidates subject to the provisions of paragraph 35.

32. Persons selected for the Apprentice Program may be required to appear for orientation and a physical examination prior to being indentured. The cost of physical examinations are to be borne one half by successful applicants and one half by the JAC. Additional persons may be invited to orientation and a physical examination by Local 28 JAC if that appears desirable. Persons selected in accordance with the above procedures shall be indentured as apprentices unless such indenturing is waived by them, or they are certified physically unable to perform sheet metal work by medical practitioner licensed in New York State.

*Advanced Apprentices*

33. There shall be established by the JAC procedures for the admission and advanced placement in the Apprentice Program of non-white apprentices who have experience in sheet metal work or trade education but cannot perform at journeyman level. Applicants for advanced placement shall have at least six months experience in sheet metal work or trade education, be physically fit and shall be not less than 18 years old or more than 35 years old by the date of indenture of the next scheduled apprentice class. For such person applying to be indentured in February and July, 1976 only, the JAC may require proof of completion of a tenth grade course of education by that date. Such requirement must be validated for subsequent utilization.

34. The Training Coordinator of JAC shall evaluate the experience of all applicants for advanced standing and shall make placement to the appropriate grade level.

The grade level assigned shall be conditional for a period to be determined by the coordinator, not exceeding three months, based upon classroom work and on the job performance. Applicants who challenge the grade level assigned shall be advised of their right to appeal to the Administrator.

35. a) The Administrator shall determine the number of advanced apprentices to be admitted from the lists resulting from each test, based upon the needs of the apprenticeship program at any given time and the number of applicants eligible for advanced standing as certified by the coordinator.

b) Apprentices who meet the requirements of Paragraph 33 shall be selected for advanced standing in the following manner:

(i) those whose ranking on the apprenticeship aptitude examination qualifies them for acceptance into the apprenticeship program pursuant to Paragraphs 22 and 30 shall be selected in accordance with their ranking and admitted with advanced standing, subject to the number determined by the Administrator pursuant to subdivision (a) of this paragraph.

(ii) if there are insufficient apprentices who qualify for advanced standing selected by the procedure contained in subdivision (b)(i) of this paragraph to satisfy the number determined by the Administrator, additional apprentices to reach this number shall be selected in ranked order, from those who are over 25 years of age and whose score on the apprenticeship aptitude examination places them below the number otherwise selected pursuant to Paragraph 22.

c) The number of apprentices admitted with advanced standing under subdivision (b)(i) of this paragraph shall be included in the number of apprentices selected pursuant to Paragraph 22 and computed in the total of non-white apprentices selected on the basis of the ratio established pursuant to Paragraph 30. The numbers of apprentices admitted with advanced standing under subdivision (b)(ii) of this paragraph shall not be included in the number of ap-

prentices selected pursuant to Paragraph 22 or computed in the total of non-white apprentices selected on the basis of the ratio established pursuant to Paragraph 30.

d) An advanced apprentice shall be entitled to all rights, privileges and other benefits including work referral, pay, instruction, and supervision accruing to regular apprentices at the same level of training.

e) Apprentices admitted with advanced standing pursuant to Paragraphs 33 through 35 who successfully complete the apprenticeship program may make the applications provided for in Paragraph 16 of this Program.

f) Advanced apprentices assigned for work may be utilized to satisfy City and City-assisted contract requirements for the employment of minority trainees.

36. The coordinator shall develop a pre-examination study group program so as to familiarize all applicants for the Apprenticeship Program with the type of test that they will be given. All applicants shall be notified in writing at least two weeks in advance of the apprentice test that the study program is available to them. Such notice shall contain the date, time, and location of the study group meetings. The meetings shall be held in the evening after 6:30 P.M. Within two weeks of the effective date of this Affirmative Action Program, the Coordinator shall submit a detailed program including but not limited to teaching methodology, program materials, and organization of the groups.

*Records*

37. In addition to any other records or lists required to be maintained under the terms of this Program or the Order and Judgment, Local 28 and JAC, as the case may be, shall maintain separately for whites and non-whites, records and lists containing the following information, beginning with the effective date of this Program.

a) Persons who request an application for or apply to take the "hands-on" journeyman's test described in Paragraphs 5 and 8;

b) Persons who take the "hands-on" journeyman's test described in Paragraphs 5 and 8;

c) Persons who pass the "hands-on" journeyman's test described in Paragraphs 5 and 8;

d) Persons who applied for journeyman admission on the basis of experience, described in Paragraph 15;

e) Persons who are admitted, and those rejected, for journeyman membership on the basis of experience, described in Paragraph 15;

f) Persons who seek or apply to transfer into Local 28 from an affiliated sister local union;

g) Persons who inquire of Local 28 about the possibility of transferring into Local 28 from an affiliated sister local union;

h) Persons who inquire of Local 28 as to the availability of work opportunities with or through Local 28, including but not limited to inquiry about or seeking "permits" or "identification slips";

i) Persons to whom "permits" or identification slips" are issued or work opportunities with or through Local 28 are otherwise made available.

j) Persons who contact Local 28 or JAC seeking sheet metal work;

k) Persons who are employed as sheet metal workers or apprentices by Local 28 contractors.

l) Persons working in sheet metal shops at the time they are organized by Local 28;

m) Persons who are reinstated to journeyman membership or to the Apprentice Program;

n) Non-whites who apply for advanced standing in the apprenticeship program described in Paragraphs 33–35;

o) Non-whites who are granted advance standing in the apprenticeship program and the standing granted as described in Paragraphs 33–35;

The records and lists specified in subsection (a) through (o) of this Paragraph shall contain the name, address, race, or national origin, union affiliation, if any, of each individual listed therein, as well as the date of the application, test, inquiry, contact, or employment (and the name of the contractor, where applicable), and the disposition with reasons, of each such application, test, inquiry, contact or employment. Copies of these records and lists shall be submitted to counsel for the parties and the Administrator at least once every three months.

Said records and lists may exclude telephonic requests for information. However, telephoners should be informed that their requests should be made in writing, and a form for this purpose shall be sent to the telephoner.

38. Local 28 or JAC, as the case may be shall submit the following data to the Administrator and parties at the time specified.

a) the name and race identity of persons admitted into (i) journeyman status in Local 28 or (ii) apprentice status in the Apprentice Program, within 5 days of such admission;

b) on January 1 and July 1 of each year the total number of (i) journeyman members of Local 28, (ii) pensioner members of Local 28 (as defined in Paragraph 2), and (iii) apprentices. Such reports shall include the percentage of non-whites in each group.

39. The JAC shall maintain complete records of all applications and other material concerned with the selection and work records of apprentices. These records shall include but not be limited to an applicant log for each examination showing the name, race, date of birth of each applicant, dates of completion of each step in the application procedure, disposition of each step in the application procedure, and disposition of each application. All such records shall be made available for inspection and copying by the plaintiffs at reasonable intervals during normal working hours or at other mutually convenient times. In addition, records shall be submitted to the Administrator and plaintiffs as follows:

a) Prior to each apprentice entrance test and within 7 days of the closing of the application procedure the JAC shall submit a report including the following information for each person who filed or requested an application for that apprentice examination: name, address, telephone number and race or national origin, if known for those who request applications.

b) Within 20 days after indenturing a class of apprentices the JAC shall provide a report of the names and ethnic classification of all persons who were rejected during the application and testing period and the reason therefore and the names of all persons whose application became inactive and the reason therefore.

c) Every six months subsequent to the indenturing of a class of apprentices the JAC shall furnish a report giving the names of all non-white apprentices, the name(s) of contractors to which each was referred and the number of hours worked.

d) The Joint Apprenticeship Committee shall furnish the names of any non-white apprentices who are dropped from the Apprentice Program. Said information shall be furnished within twenty days from the date action is taken by the Joint Apprenticeship Committee. Said report shall contain the reason why the individual was dropped from the program and the steps taken by the Joint Apprenticeship Committee to retain the individual in the program. The report shall also include the training and employment history of the individual while he was in the program. The Joint Apprenticeship Committee shall furnish the names of all non-white apprentices who leave the program other than by action of the JAC. Such report shall contain the reason the apprentice has left the program as ascertained by an exit interview diligently attempted. Said information shall be furnished within twenty days from the time the JAC is notified that the apprentice has left the program.

40. All records and lists required to be compiled by this Program shall be maintained for ten years and shall be made available for inspection and copying by the parties and the Administrator on reasonable notice during regular business hours or at other mutually convenient time without further order of the court.

### Advertising and Publicity

41. The parties shall use their best efforts to disseminate accurate information to the non-white community of opportunities within Local 28 and the Local 28 apprentice program.

42. Prior to each "hands-on" journeyman's test and apprentice entrance test, at a time to be selected by the Administrator to insure full coverage and effectiveness Local 28 (in the case of the "hands-on" journeyman's examination) and JAC (in the case of apprentice entrance tests) shall undertake a program of advertising and publicity, under the overall supervision of the Administrator, designed to inform the non-white community in New York City of the date, location, and nature of such examinations, the qualifications therefore and the opportunities available upon successful completion of the test. Additionally, the overall apprenticeship recruiting and publicity campaign shall include a component limited toward advanced apprentices. These campaigns may include print and electronic media, dissemination of material to community, government and minority organizations. The City of New York may provide space and opportunities for such publicity.

43. By March 1, 1976 Local 28 and JAC shall provide to the Administrator and the other parties a written plan of an effective general publicity campaign designed to inform the non-white community in New York City of non-discriminatory opportunities in Local 28 and the Local 28 apprentice program as provided in the Order and Judgment and this Program. The other parties shall have 30 days to comment upon the written plan and the Administrator, having considered all submissions, shall revise the plan if he deems necessary and shall order it into effect by May 1, 1976.

### Work Referral

44. The Administrator shall conduct a study of the present Local 28 work referral system as described in the written statement submitted pursuant to Paragraph 21(g) of the Order and Judgment. This study shall be completed by June 15, 1976 and the Administrator shall submit to the parties such recommendations he deems necessary to assure that non-whites do not bear a disproportionate share of unemployment.

### Resolution of Disputes

45. a) The Administrator shall hear and determine all complaints concerning the operation of the Order and Judgment and this Program and shall decide any questions of interpretation and claims of violations of the Order and Judgment and the Program, acting either on his own initiative or at the request of any party herein or any interested person. All decisions of the Administrator shall be in writing and shall be appealable to the Court.

b) Any party or any individual affected by this Program may make a complaint to the Administrator within thirty days after the situation complained of arises. The Administrator shall give the parties notice of such a complaint within five days and, where a hearing is in his discretion warranted, expeditiously schedule such hearing.

### General Provisions

46. The union and the JAC shall post conspicuous notices, in language and at locations approved by the Administrator, advising individuals of their rights under this Program within 60 days after the Program is approved by the Court.

47. Nothing contained in the Program should be construed as preventing the Executive Board from adopting portions of the Program for the benefit of whites and other minorities provided that such plans do

not interfere with the operation of this Program.

48. Except as modified, changed or amended by the terms of this Program or order of the Administrator, Local 28 and JAC shall not change, modify or amend any aspect of the operation or content of the Apprentice Program, or the conditions or terms upon which an individual shall become a member of the Apprentice Program of Local 28 or entitled to work within the jurisdiction of Local 28.

49. At any time, any of the parties herein may apply to the Administrator and then to the Court for the purpose of seeking additional orders to insure the full and effective implementation of the terms and intent of this Program.

Dated: New York, New York
 November 12, 1975
 s/David Raff
 DAVID RAFF, ESQ.
 Administrator

SO ORDERED.

s/HENRY F. WERKER
U. S. D. J.

Dated: November 13, 1975

[Filed November 25, 1975]

## APPENDIX A

New York State Division of Employment (Department of Labor)

Department of Employment of the City of New York

Bureau of Labor Services of the City of New York

Recruitment and Training Program, Inc.

Fight Back

Asian Americans for Equal Employment

Black Economic Survival

Regional Neighborhood Manpower Service Centers of New York City

New York City Board of Education (Public High School and Evening Trade Division)

Williamsburg Coalition

New York Urban League

National Association for the Advancement of Colored People

Puerto Rican Community Development Project

National Association for Puerto Rican Civil Rights

Citywide Coalition of Black, Hispanic, and Asians in Construction

New York Project Equality

Commonwealth of Puerto Rico

Opportunities Industrialization Center of New York, Inc.

Bedford-Stuyvesant Restoration Corp.

New York City Human Rights Commission*

New York State Division of Human Rights*

## MEMORANDUM AND ORDER

WERKER, District Judge.

The court has read and considered the Affirmative Action Program submitted by the Administrator, the objections submitted by Local 28, the JAC, the City, and the E.E.O.C. together with all appendices and replies to each other's objections which were filed in court before 3 p. m. on October 17, 1975.

The following are the observations and rulings of the court which the Administrator is directed to implement by amendment and modification of the Program as submitted. References are to sections of the Program unless otherwise noted. Sections which are not otherwise mentioned are approved by implication.

1. Section 1 is approved.

2. Section 2. While the court's order and judgment did not set interim goals it was hoped that the parties could agree upon such goals as would realistically result in the ultimate percentage at the deadline. The court finds that the proposed goals are not excessive and are consequently approved. The suggestions of counsel for Local 28 are rejected as being the same type of approach to this problem as has

* Send notices of exams, but no bulk application

been taken by the Union over the last ten years and which has resulted in a mere 4% non-white membership.

█ To the extent that pensioners are defined in the Program that definition is adopted by the court. Without discounting the political effect which the non-working pensioners' votes may have, it is the court's rationale that the Programs's goals should be primarily addressed to the work force rather than the internal operations of the Union. To do otherwise might create constitutional issues which have no place in this Program or litigation. It is the court's belief that ultimately the Union membership, including pensioners, will recognize the rights of non-whites and the fact that those rights must be enforced regardless of the cost to the courts or the governments involved in order to secure to all working people those rights which the Constitution has guaranteed.

█ 3. Sections 3(b) and 15. There is an implied assumption on the part of Local 28 that the Program may be dragged out until the penultimate date and that it need not diligently and forcefully attempt to achieve the ultimate goal at an earlier date. Nothing is further from the contemplation of the court. If that goal can be reached in 1, 2 or 3 years then it should be so reached. This is why the court adopts the proposals contained in the above-numbered paragraphs. Defendant Local 28's claim that no necessity or desirability has been shown and that the proposal is premature is, for the reason above stated, as well as the whole purpose of the litigation, misguided. All avenues are opened by the opinion and should remain open until the goal is reached. To the extent that this was labeled an option in the opinion, it was an option open to non-whites. If a sufficient number can be found who are qualified they should be admitted. Since the program is prospective, no one can now know how many non-whites there are who are qualified under these paragraphs.

There would appear to be no reason for an age limit qualification other than the age of 18.

The court adopts the proposal for a tripartite examining board.

If it be true that many of the present membership reside outside the limits of New York City there is no reason why applicants should be restricted to New York City. The residency requirement should be increased to six (6) months to assure bona fide residency. Throughout the Program the qualifications should include a requirement of citizenship or an alien status which legally permits work in the United States.

█ 4. Sections 4(b) and 33–36. These sections are approved except as noted below. What was said about goals in paragraphs 1 and 2 hereof is also applicable here.

Paragraph 33(b) should be deleted to the extent that it does not require examination. It appears to the court that all applicants should be required to take the aptitude test. It should not be left to conjecture as to whether the applicant has the aptitude to become a journeyman. If he does not pass the aptitude test there would appear to be no reason why he should be placed in an advanced position in the apprenticeship program. Furthermore all those placed in an advanced position should be so placed conditionally based upon classroom work and on job performance for a period to be determined by the coordinator not exceeding three months.

Section 36 should not be deleted. It should be broadened to provide that nothing contained in the Program should be construed as preventing the Executive Board from adopting portions of the Program for the benefit of whites and other minorities provided that such plans do not interfere with the operation of this Program.

5. Sections 5, 6, 7, 8 and 9 are approved.

6. Section 10 is approved except with respect to age which shall be fixed at 18 (10(b)), and residency (10(c)).

 7. Section 11 is supplemented to the extent requested in defendant Local 28's objection 8.

An examination of the application form annexed to Local 28's objections does not indicate that it is unduly complicated. An update of the informational items will, however, be required. The applicants should be informed in writing as to the place of examination with instructions as to how to reach the place and/or a map indicating its location.

The maximum examination fee of $25 is adopted provisionally. The defendants may apply to the Administrator for an increase upon a showing that such an increase is needed. Verified costs, *i. e.*, vouchers *verified* by vendors, should be presented to show these costs. The evidence submitted by the City indicates that even this fee is prohibitive to application by a number of non-whites. An initial screening of applicants for the journeyman test ought to be held by the organizations through which they are produced and/or the Union. Results of the journeyman test of October 11, 1975 may indicate that some applicants who took the test were not qualified to do so. This results in wasted effort on everyone's part. Without suggesting that it has been done, we are not interested in testing a number of bodies but persons who are actually qualified but have been discriminated against in the past.

 8. Paragraphs 15, 16 and 17 are approved. In 16(b) the proration of the initiation fee over a period of two years is unnecessarily restrictive. This should be amended to relate to *income* not *time* and should possibly be included in check off provisions. Thus perhaps 10% of the net check should be paid for the initiation fee until the fee is paid.

The objection contained in defendant Local 28's objection 12B has no place in this Program. It is the assumption of the court that any affirmative action provisions contained in the Program for non-whites with respect to 16(a) and (b) will equally be applicable to whites and other minorities.

9. Paragraph 17 of the plan is approved. With the additional language to be added as set forth in the City's letter of October 15, 1975, page 1.

10. Paragraphs 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28 and 29 are approved. The date for the December test is the 13th not the 11th as shown in the Program in paragraph 28.

11. The suggestion of the United States Attorney amending the first sentence of paragraph 30 as contained in his letter of October 10, 1975 at page 2 is approved. The deletion of the second sentence is approved and the insertion in its place of the City's paragraph in p. 3 of its letter of October 10, 1975 is approved.

12. Paragraph 31 is approved.

 13. Paragraph 32 is amended so as to provide that the successful applicant will bear one-half the cost and JAC the other half. The importance of sound physical condition is such that the safety of all are involved in it. The cost as thus reduced to the applicant assuming a $34 maximum should be easily payable. The utilization of facilities other than those used by JAC is not acceptable since the nature of the examination is subject to too many variations and possible unethical practices.

As indicated earlier, paragraph 33(b) is in part deleted. The court believes that it is unfair to other applicants to exempt those claiming one year or more experience from the aptitude test. Furthermore if the test is as job-related as it should be those with the experience should have no difficulty with it. The preference to be granted should be based upon scores and work experience as determined by the coordinator. The number to be admitted should be determined by the Administrator based upon the certification by the coordinator and the needs of the apprentice program at any

given time. This will require rewriting paragraphs 33 and 35 and possibly paragraph 31(b).

14. With respect to the Union's objections to the adoption of a rotation system of employment for apprentices, it is suggested that the adoption of such a system will motivate more apprentices to continue in the trade and will eliminate the probability that the upper classmen apprentices, who may be mostly white, will be preferred over lower classmen who will, it is hoped, be significantly non-white. The court finds these two reasons sufficiently persuasive to adopt the program during the period of transition to the 29% goal.

15. With respect to paragraph 37 the court agrees that telephonic requests for information should be excluded from the record keeping. Telephoners should, however, be informed that their requests should be made in writing and a form for this purpose should be sent to them with regard to each of the categories mentioned in this paragraph.

The submission of these records once every three months during the first year of the Program and thereafter every six months is approved.

16. Sections 39, 40, 41, 42, 43, 44 and 45, 46, 47, 48 are approved as they are set up in the plan.

17. It should be noted by the parties that in the court's concept of the role of the Administrator, he is not a neutral person. He is the executor of the order and judgment of the court and its alter ego and, to that extent, he is partisan to the letter and spirit of the court's judgment. It has been brought to the attention of the court that numerous small harassing tactics have been utilized during the period from the date of the judgment to this date. A continuation of such practices is proscribed.

18. It appears that the major source of journeymen will ultimately be the apprenticeship program. The court has found that the test as administered was a major obstacle to non-white participation in this program. It would appear to the court that this may be so with respect to even validated tests. As a consequence, the Administrator is directed to incorporate in the program a pre-examination study group program to be conducted by the coordinator so as to familiarize *all* applicants with the *type* of test to which they will be exposed.

19. In the contemplation of the court the 29% figure reached in the judgment may result by the time the deadline is reached, in a lesser number of non-whites, than estimated at the time of the judgment, assuming an increase in attrition of Union membership due to the economy or other factors not now foreseeable. Thus accurate reporting of membership is an essential part of the Program.

The corrections and clarifications contained in the United States Attorney's letter of October 10, 1975 as applicable are adopted and approved.

The Administrator is directed to redraft the Program in accordance with this memorandum and order. Oral argument is denied as being unproductive.

So ordered.

## ANNEX

### PROPOSED AFFIRMATIVE ACTION PROGRAM

*Introduction*

1. This Affirmative Action Program ("Program") is adopted pursuant to the Decision and Order dated July 18, 1975 and the Order and Judgment dated August 28, 1975 and entered in this action on September 2, 1975 ("Order and Judgment"). The goal of this Program is to assure that the non-white * membership in Local Union No. 28 of the Sheet Metal Workers' International Association ("Local 28") reaches a minimum level of 29% by July 1, 1981; to assure that substantial and regular progress is made toward this goal in each year prior to 1981; and to assure that non-white members of Local 28 and

---

* "Non-white" as used in the Program means black and Spanish surnamed individuals.

non-white apprentices of Local 28 share equitably in all employment opportunities afforded to members of Local 28.

2. For the purpose of reaching the above goal of 29% by July 1, 1981 this Program established as interim percentage goals for the non-white membership of Local 28 the following:

| July 1, 1976 | 10% |
| July 1, 1977 | 13% |
| July 1, 1978 | 16% |
| July 1, 1979 | 20% |
| July 1, 1980 | 24% |

Each of the above percentages shall be measured against the total membership of Local 28 as of each interim goal date respectively and the final goal date. For the purpose of measurement, total membership shall include all journeyman members, all pensioners ** who have been employed as sheetmetal workers within the last three years, and all members or participants in the Local 28 Apprentice Program ("apprentice Program"). The parties to this action and the Administrator are to implement this Program so that these interim goals may be attained. The Administrator shall periodically review the progress toward the attainment of these goals and take such action as he is empowered to take under the Order and Judgment to assure their achievement.

3. Admission to Journeyman membership in Local 28 shall be attained only through the following procedures:
 a) Successful completion of a "hands-on" journeyman test administered pursuant to Paragraphs 5–14; or
 b) establishment of proof of the required experience in the sheetmetal trade pursuant to Paragraph 15; or
 c) successful completion of the Local 28 Apprentice Program; or
 d) transfer in accordance with the Sheet Metal Workers' International Union Constitution and Ritual; or
 e) organization of non-union shops.

4. Membership in the Apprentice Program shall be obtained only through the following procedures:
 a) successful completion of an apprentice aptitude test as set forth in Paragraphs 21–32; or
 b) entry with advanced standing as set forth in Paragraphs 33 through 36.

## Admission to Journeymen Status

5. Under the supervision and with approval of the Administrator, Local 28 shall administer a "hands-on" journeyman's test on October 11, 1975 designed to test fairly and in a non-discriminatory manner the skills needed for a journeyman sheet metal worker. This test and its grading shall be in substance the equivalent of the "hands-on" portion of journeyman's test given by Local 28 in November, 1969 as revised by a sheetmetal expert provided by the plaintiffs or the New York State Division of Human Rights. Disputes as to any proposed revisions shall be resolved by the Administrator. There shall be a filing fee of $25 for this test.

6. Local 28 shall undertake a program of publicity and advertising and prepare, make available, and process applications relating to the October 11, 1975 "hands-on" journeyman's test in accordance with the standards and conditions set forth heretofore by the parties and the Administrator. The administration and grading of the test shall be under the overall supervision of the Administrator and shall be accomplished and recorded in such a manner as to facilitate the professional development and validation of future "hands-on" journeyman's tests.

7. Under the following conditions all persons who receive a passing grade in the test described in Paragraph 5 and 6, and who are physically fit for sheetmetal work shall be eligible for admission to full journeyman membership in Local 28 as follows:

 a) all non-white applicants who receive a passing grade, up to a total of 200 such applicants, shall be admitted to journeyman membership by December 1, 1975 in accordance with and subject to the provisions of Paragraphs 16–18 of the Program. In the event that more than 200 non-white applicants receive a passing grade and elect to exercise their rights to admission to journeymen membership under this Program, the 200 non-whites with the highest grades shall be admitted by December 1, 1975; the remaining non-white applicants shall be admitted in accordance with the provisions of sub-paragraph (b) of this paragraph;

 b) white applicants who receive a passing grade shall be placed on a list and ranked in descending order on the basis of their grades on the examination.

 i) white applicants shall be selected for admission in the order of their ranking on the above described list on the basis of a ratio to the non-whites admitted pursuant to section (a) of this Paragraph. Said ratio shall be agreed upon by the parties, but in no event shall the ratio of non-whites to whites be less than 1 to 1. Such ratio shall be designed with the purpose of implementing the interim goals set forth in Paragraph 2.

---

** "Pensioner" as used in the Program means any individual who receives benefits from the Local 28 pension program.

If the parties cannot agree on a ratio by November 10, 1975 the Administrator shall establish such ratio by November 15, 1975.

ii) all applicants who receive a passing grade but who are not admitted pursuant to subparagraph (a) or section (i) of subparagraph (b) may be ordered admitted to journeyman membership by the Administrator at a time deemed suitable by him. White applicants who have received a passing grade and who are not admitted by March 1, 1976 shall be eligible for a selection priority over other white applicants qualified by the journeyman's tested held in the Spring of 1976, or subsequent tests. Non-white applicants who have received a passing grade and who are not admitted pursuant to subparagraph (a) shall be admitted by July 1, 1976, if they so elect.

8. Local 28 shall administer a non-discriminatory, "hands-on" journeyman's test under the overall supervision and approval of the Administrator in the Spring of 1976 and at least once a year thereafter. The Administrator, after consultation with the parties, may apply to the Court to decrease the frequency of the tests consistent with the requirements of the interim goals set forth in Paragraph 2.

9. The journeyman's "hands-on" tests administered pursuant to Paragraph 8 shall be professionally developed and validated in accordance with EEOC Guidelines. Within a reasonable time before the administration of each test (which shall not be less than four weeks unless good cause is shown), Local 28 shall furnish counsel for the parties and the Administrator with (i) a copy of a report demonstrating the validity of the test and (ii) a copy of the test to be administered, provided that counsel for the parties and the Administrator shall not distribute or disclose the contents of the test to any individual or organization except for the purpose of professional validation thereof.

10. All qualified applicants shall be eligible to take the "hands-on" journeyman test specified in this Program. A qualified applicant is defined as follows: any person who

a) has or will have attained the age of 22 by the date of the test, and

b) is a citizen or a lawful permanent resident alien legally entitled to work in the United States, and

c) has resided in New York City or the counties of Westchester (N.Y.) Nassau (N.Y.) Suffolk (N.Y.), Passaic (N.J.) Bergen (N.J.) Hudson (N.J.) Union (N.J.) or Essex (N.J.) for 60 consecutive days prior to the filing of an application, and

d) has one year of sheet metal work experience including but not limited to employment as a member in any branch of Local 400 of the Sheet Metal Workers International Association, sheet metal experience in the Armed Forces or vocational education or training related to the skills of a journeyman sheet metal worker.

Persons presently registered or recently registered in the Local 28 Apprentice Program or any other recognized apprentice program affiliated with the Sheet Metal Workers' International Association are not eligible.

11. Subject to the approval of the Administrator, Local 28 shall develop a standardized application form for the "hands-on" journeyman's test. Such forms shall include only the following:

a) provisions for the name, address, telephone number, social security number, age, sex and race or ethnic identification of the applicant (with a notation that information regarding race or ethnic identification is required solely for the purpose of compliance with the court order herein and the regulations of the United States Equal Employment Opportunity Commission), and previous sheet metal experience.

b) information regarding the eligibility requirements, fee, date, time, location, and nature of the "hands-on" journeyman's test.

12. Local 28 shall make available an application form for the "hands-on" journeyman's test and a short description of the nature of the test in the following manner:

a) at the offices of Local 28;

b) by mail in response to inquiries and requests made by mail;

c) in bulk to plaintiffs, City Department of Employment, the New York State Employment Service, Recruitment and Training Program, Inc., Fight Back, and the other governmental or community agencies listed in Appendix A as amended from time to time.

Completed applications for the test shall be accepted by mail or delivery in person at the offices of Local 28. Local 28 may establish, with the approval of the Administrator, a suitable cut-off date for the acceptance of applications. Local 28 may establish a fee for the taking of the "hands-on" journeyman test consistent with the cost of administering such a test, but in no event shall such fee exceed $25.00.

13. The "hands-on" journeyman test shall be graded by a Board of Examiners consisting of three members knowledgeable in Sheet Metal: a representative chosen by Local 28, a representative chosen by the Administrator, and a representative chosen by the Plaintiffs and the State Division of Human Rights. Such Board shall act by majority vote. Said Board of Examiners shall employ the passing grade level developed pursuant to the validation procedures set forth in Paragraph 9. All applicants shall be advised of their status by first class mail within 30 days of the test. Non-whites who fail the test shall be advised of their possible eligibility for advanced standing in the apprenticeship program.

14. (a) A qualified non-white applicant who passes the test and is physically fit to perform sheet metal work shall be admitted to journeyman status in Local 28 within 60 days of the test unless the applicant elects to defer admission pursuant to Paragraph 19.

(b) A qualified white applicant who passes the test and is physically fit to perform sheet metal work shall be admitted to journeyman status in Local 28 in accordance with the following procedures:

(i) within 20 days of the test the parties shall attempt to agree on an appropriate ratio of non-whites to whites to be admitted to journeyman status. This ratio will be established with the purpose of fairly implementing the interim and final goals set forth in Paragraphs 1 and 2 but in no event shall said ratio be less than one-to-one. If no agreement is reached within 20 days, the Administrator shall establish the ratio within 5 days thereafter.

(ii) in accordance with the above ratio white applicants shall be admitted on the basis of the highest scores achieved on the "hands-on" journeyman test;

c) To the best of their ability the parties and the Administrator shall endeavor to set forth on the application form the most accurate estimate of the opportunities available to whites based on the number of preferred candidates pursuant to Paragraph 7(b), the number of expected non-white candidates, and past experience.

15. Commencing January 1, 1976 there shall be established a program for admission to Local 28 journeyman membership of non-whites who have had four years experience obtained in the United States or elsewhere, in sheet metal work or employment reasonably related or similar to sheet metal work, including experience in the Armed Forces, or vocational training related to the skills of a sheet metal worker. Persons eligible for admission under this program must,

a) be a resident of New York City, or the counties of Nassau (N.Y.) Suffolk (N.Y.) Westchester (N.Y.), Bergen (N.J.) Passaic (N.J.) Essex (N.J.) Union (N.J.) or Hudson (N.J.) for 60 consecutive days prior to application; and

b) be age 22 or over; and

c) be physically fit to perform sheet metal work; and

d) establish to the satisfaction of a majority of a board of three members knowledgeable in sheet metal work, comprised of a representative chosen by Local 28, a representative chosen by the Administrator, and a representative chosen by the plaintiffs and the State Division of Human Rights that the applicant has the requisite sheet metal experience.

The Administrator, after due consultation with all the parties, shall establish procedures for application to this program, for investigation and verification of the criteria set forth in subparagraphs (a) through (d), and for the timing and conditions of admission. Appropriate publicity for the program shall be undertaken at the direction and with the approval of the Administrator.

16. (a) Upon proper application, a non-white eligible for admission to journeyman membership in Local 28 pursuant to Paragraphs 5 through 15 or Paragraph 35(d) of this Program may request of Local 28's Executive Board that the Local 28 initiation fee be reduced pursuant to the provisions of Paragraph 22(d) of the Order and Judgment. Within 5 days of receipt of such application, the Local 28 Executive Board shall render a decision on the application in writing and notify the applicant, the Administrator and the parties of the disposition of the application (the notification to the Administrator and the parties shall include the name and address of the applicant). If such application is denied in whole or in part, or is not acted upon within five days of its receipt by the Executive Board of Local 28, an application may be made to the Administrator who shall either grant or deny the request in writing after duly considering all the factors set forth in Paragraph 22(d) of the Order and Judgment. In considering such an application the Administrator may require the submission of such information, documents, or other data from either Local 28 or the applicant as he deems necessary.

(b) Upon proper application a non-white eligible for admission to journeyman membership in Local 28 pursuant to Paragraphs 5 through 15 or Paragraph 35(d) may request of the Local 28 Executive Board that payment of the Local 28 initiation fee be pro-rated over a period of time not to exceed two years. Within 5 days of the receipt of such application the Local 28 Executive Board shall render a decision on the application in writing and notify the applicant, the Administrator and all parties of the disposition of the application (the notification to the Administrator and the parties shall include the applicant's name and address). If such application is denied in whole or in part or not acted upon within 5 days of its receipt by the Executive Board of Local 28, an application may be made to the Administrator who shall either grant or deny the application in writing and set such schedules and payments as he shall determine. The decisions of the Executive Board of Local 28 and the Administrator shall be made having duly considered all pertinent facts, including, but not limited to, the following circumstances:

i) the financial circumstances of the applicant and Local 28;

ii) the present and future employment situation in the sheet metal industry in New York City in general;

iii) the likelihood and nature of future employment for the individual applicant

17. At any time after an application pursuant to Paragraph 16 has been pending with the Administrator for more than 5 days a non-white

eligible for admission to journeyman membership in Local 28 pursuant to Paragraph 5 through 15 or Paragraph 35(d) of this Program shall be admitted conditionally to journeyman membership upon payment of $100 dollars and three months dues pending the determination of the Administrator which shall be made within 30 days of the date of the application to the Administrator. During such conditional membership an applicant will be entitled to all the rights and privileges of regular journeyman membership.

18. The granting of any application pursuant to Paragraph 16 shall not diminish any rights or privileges accruing to journeyman membership in Local 28.

19. A person eligible for admission pursuant to Paragraphs 5 through 14 shall be permitted to defer such admission for up to six months from the time he is first entitled to be admitted. During such period, a person who has elected to defer may apply to the administrator for further deferral of admission for up to another 12 months. If an applicant invokes his right of deferral he shall be admitted, on the same terms and conditions as he was previously entitled, within 30 days of written notice to Local 28 that he seeks to be admitted.

20. Local 28 shall issue "permits" or "identification slips" only with the express written consent of the Administrator, and pursuant to Paragraph 22(f) of the Order and Judgment.

*Apprentice Program*

21. The Local 28 Joint Apprenticeship Committee ("JAC") shall maintain an apprentice program of four years duration or less. The terms and conditions of the apprentice program shall be as set forth in the Collective Bargaining Agreement ("Standard Form of Union Agreement . . . between Local . . . and Sheet Metal Contractors."), the Local 28 Joint Apprenticeship Trust and Indenture, and the rules and regulations thereunder except where modified by the Order and Judgment, the provisions of this Program, or order of the Administrator pursuant to his powers under the Order and Judgment.

22. The apprentice program shall indenture no less than 300 apprentices by July 1, 1976 of which no less than 100 apprentices shall be indentured by February 2, 1976. No less than 200 apprentices shall be indentured in each year thereafter up to and including 1981. Said number shall include those apprentices admitted with advanced standing. The JAC may indenture apprentices in two separate classes during a year.

23. Apprentices shall be assigned for employment in a ratio of not less than one apprentice for every four journeymen working of the aggregate journeymen employed. Seniority shall not be a criterion for employment, and apprentices shall be rotated for employment where necessary

and feasible. The JAC shall make every effort to provide apprentices with classroom instruction, including evenings and Saturdays where necessary, during periods of unemployment, and shall credit such hours toward fulfillment of apprenticeship requirements. The JAC may authorize the accelerated advancement or graduation of any apprentice as it deems proper.

24. Upon successful completion of the Apprenticeship Program, apprentices shall be promptly admitted to full journeyman membership upon payment of the balance due of the initiation fee, if any, which upon application to the Local 28 Executive Board, may be paid on an installment basis for good cause shown, and subject to the procedures contained in Paragraph 16.

25. Applications shall be made available to and accepted from any qualified candidate. A qualified candidate is defined as follows: any person who is deemed physically fit for sheet metal work and who has or will have attained the age of 18 years by the date of indenture of the next scheduled apprentice class and who is not older than 25 years of age (for veterans of active military duty the age limit is extended one year for each year of such duty up to the age of 30 and up to the age of 35 for non-whites applying for advanced standing). For the apprentice aptitude test to be administered in November, 1975 only, JAC may require proof of completion of a tenth grade course of education. The JAC shall validate the tenth grade requirement before said requirement may be imposed for subsequent examinations.

26. With the approval of the Administrator JAC shall develop a standardized application form for the Apprentice Program. The application form shall include information about the date of the next class of apprentices to be indentured, and shall require only the following information of the applicant:

 a) Name, address and telephone number:
 b) Birth date and age:
 c) Social Security number;
 d) Extent of education;
 e) Sex;
 f) Race or ethnic classification; (with a notation that this information is required solely for the purposes of compliance with federal anti-discriminations statutes);
 g) military service;
 h) convictions and pending criminal charges.
 i) Citizenship or lawful permanent resident alien status

27. Application forms for the Local 28 JAC Apprentice Program shall be available at the offices of the JAC during normal business hours and at the offices of the organizations listed in Appendix A at least 60 days before an examination. Application forms shall be made available by mail upon written request. Completed applications shall be accepted in person or by mail at the offices of the JAC. There shall be a filing

fee of no more than $15.00. Application forms shall be made freely available to any governmental employment office and minority community organizations not listed in Appendix A upon request. The time for filing applications for a particular apprentice test may be closed by the JAC at a reasonable time (not to exceed three weeks) before the date of the examination.

28. An apprentice aptitude test shall be given on December 11, 1975 and at least once yearly thereafter at a date, time and location approved by the Administrator. The test shall consist of the following professionally developed and validated components: (1) a basic "read and follow directions" test designed to ascertain an applicant's ability to master and understand those written and verbal instructions, directions, and other communications necessary to participate in the Apprentice Program at the first year level; and (2) a mechanical comprehension test similar in substance and scope to that mechanical comprehension test administered by JAC in April 1969. There shall be professionally developed and validated a qualifying score on the "read and follow directions" test designed to reflect the minimum ability necessary to participate in the Apprentice Program at the first year level. [Consideration of the inclusion of a math test in the December examination has been postponed. See attached letter.]

29. Within three weeks of the administration of an apprentice entrance test, JAC shall provide the Administrator and all parties with:

(a) the names, race identification, raw scores and rank of all candidates on all tests; and

(b) the mean and median scores on all tests of all identifiable racial and ethnic groups among the candidates.

30. Persons selected to be indentured as apprentices pursuant to Paragraph 22 shall be selected in accordance with a ratio of non-whites-to-whites which shall be established by agreement of the parties within 30 days after the tests results are known, or by the Administrator within 15 days thereafter if the parties fail to agree. The parties shall agree by November 10, 1975, what the ratio shall be for the classes to be indentured in February and June, 1976. If no agreement is reached the Administrator shall establish the ratio by November 15, 1975. In arriving at an appropriate ratio for the entry of non-whites and whites into the Apprentice Program, the parties and the Administrator shall use their best efforts to assure that the total population of the program shall not exceed 60% non-white individuals, and that an individual term or class shall not exceed 70% non-white individuals.

31. In fulfillment of JAC's and Local 28's obligations under Paragraphs 22 and 30 apprentices chosen by means of the apprenticeship entrance test shall be selected from those who meet or exceed the qualifying score on the "read and follow directions" test in the following manner:

(a) the white apprentices shall be selected on the basis of the highest scores received on the mechanical comprehension test among the white eligible qualified candidates;

(b) the non-white apprentices shall be selected on the basis of the highest scores received on the mechanical comprehension test among non-white eligible qualified candidates subject to the provisions of paragraph 35.

32. Persons selected for the Apprentice Program may be required to appear for orientation and a physical examination prior to being indentured. The cost of physical examinations are to be borne by successful applicants. Additional persons may be invited to orientation and a physical examination by Local 28 JAC if that appears desirable. Persons selected in accordance with the above procedures shall be indentured as apprentices unless such indenturing is waived by them, or they are certified physically unable to perform sheet metal work by a medical practitioner licensed in New York State.

*Advanced Apprentices*

33. There shall be established by the JAC procedures for the admission and advanced placement in the Apprentice Program of non-white apprentices who have experience in sheet metal work or trade education but cannot perform at journeyman level. Applicants for advanced placement shall be physically fit and shall be not less than 18 years old or more than 35 years old by the date of indenture of the next scheduled apprentice class. For such person applying to be indentured in February and July, 1976 only, the JAC may require proof of completion of a tenth grade course of education by that date. Such requirement must be validated for subsequent utilization.

a) Applicants with at least six months but less than one year experience in sheet metal work or trade education shall be eligible to take the apprenticeship aptitude examination as set forth in Paragraph 28.

b) Applicants with more than one year experience in sheet metal work or trade education shall be eligible for indenture without taking the examination.

c) The overall apprenticeship recruiting and publicity campaign shall include a component directed toward advanced apprentices.

34. The Training Coordinator of JAC shall evaluate the experience of all applicants for advanced standing and shall make placement to the appropriate grade level. Applicants who challenge the grade level assigned shall be advised of their right to appeal to the Administrator.

35. a) Apprentices shall be selected for advanced standing in the following manner: those who meet the requirements of Paragraph 33(a) whose ranking on the apprenticeship aptitude

examination qualifies them for acceptance into the apprenticeship program shall be admitted with advanced standing along with such numbers of those who meet the requirements of Paragraph 33(b) so that the combined total of advanced apprentices shall equal the number of non-white first term apprentices admitted, unless the group of advanced apprentices is sooner exhausted.

b) The numbers of apprentices admitted with advanced standing shall be included in the total of non-white apprentices selected on the basis of the ratios established pursuant to Paragraph 30.

c) An advanced apprentice shall be entitled to all rights, privileges and other benefits including work referral, pay, instruction, and supervision accruing to regular apprentices at the same level of training.

d) Apprentices admitted with advanced standing pursuant to Paragraphs 33 through 35 who successfully complete the apprenticeship program may make the applications provided for in Paragraph 16 of this Program.

e) Advanced apprentices assigned for work may be utilized to satisfy City and City-assisted contract requirements for the employment of minority trainees.

36. Nothing in Paragraphs 33–35 is intended to preclude the JAC from establishing a similar program for whites.

### Records

37. In addition to any other records or lists required to be maintained under the terms of this Program or the Order and Judgment, Local 28 and JAC, as the case may be, shall maintain separately for whites and non-whites, records and lists containing the following information, beginning with the effective date of this Program.

a) Persons who request an application for or apply to take the "hands-on" journeyman's test described in Paragraphs 5 and 8;

b) Persons who take the "hands-on" journeyman's test described in Paragraphs 5 and 8;

c) Persons who pass the "hands-on" journeyman's test described in Paragraphs 5 and 8;

d) Persons who applied for journeyman admission on the basis of experience, described in Paragraph 15;

e) Persons who are admitted, and those rejected, for journeyman membership on the basis of experience, described in Paragraph 15;

f) Persons who seek or apply to transfer into Local 28 from an affiliated sister local union;

g) Persons who inquire of Local 28 about the possibility of transferring into Local 28 from an affiliated sister local union;

h) Persons who inquire of Local 28 as to the availability of work opportunitie with or through Local 28, including but not limited to inquiry about or seeking "permits" or "identification slips";

i) Persons to whom "permits" or "identification slips" are issued or work opportunities with or through Local 28 are otherwise made available.

j) Persons who contact Local 28 or JAC seeking sheet metal work;

k) Persons who are employed as sheet metal workers or apprentices by Local 28 contractors.

l) Persons working in sheet metal shops at the time they are organized by Local 28;

m) Persons who are reinstated to journeyman membership or to the Apprentice Program;

n) Non-whites who apply for advanced standing in the apprenticeship program described in Paragraphs 33–35;

o) Non-whites who are granted advance standing in the apprenticeship program and the standing granted as described in Paragraphs 33–35;

The records and lists specified in subsection (a) through (o) of this Paragraph shall contain the name, address, race, or national origin, union affiliation, if any, of each individual listed therein, as well as the date of the application, test, inquiry, contact, or employment (and the name of the contractor, where applicable), and the disposition with reasons, of each such application, test, inquiry, contact or employment. Copies of these records and lists shall be submitted to counsel for the parties and the Administrator at least once every three months.

38. Local 28 or JAC, as the case may be shall submit the following data to the Administrator and parties at the time specified.

a) the name and race identity of persons admitted into (i) journeyman status in Local 28 or (ii) apprentice status in the Apprentice Program, within 5 days of such admission;

b) on January 1 and July 1 of each year the total number of (i) journeyman members of Local 28, (ii) pensioner members of Local 28 (as defined in Paragraph 2), and (iii) apprentices. Such reports shall include the percentage of non-whites in each group.

39. The JAC shall maintain complete records of all applications and other material concerned with the selection and work records of apprentices. These records shall include but not be limited to an applicant log for each examination showing the name, race, date of birth of each applicant, dates of completion of each step in the application procedure, disposition of each step in the application procedure, and disposition of each application. All such records shall be made available for inspection and copying by the plaintiffs at reasonable intervals during normal working hours or at other mutually convenient times. In addition, records shall be submitted to the Administrator and plaintiffs as follows:

a. Prior to each apprentice entrance test and within 7 days of the closing of the application procedure the JAC shall submit a report including the following information for each person who filed or requested an application for that apprentice examination: name, address, telephone number and race or national origin, if known for those who request applications.

b. Within 20 days after indenturing a class of apprentices the JAC shall provide a report of the names and ethnic classification of all persons who were rejected during the application and testing period and the reason therefore and the names of all persons whose application became inactive and the reason therefore.

c. Every six months subsequent to the indenturing of a class of apprentices the JAC shall furnish a report giving the names of all non-white apprentices, the name(s) of contractors to which each was referred and the number of hours worked.

d. The Joint Apprenticeship Committee shall furnish the names of any non-white apprentices who are dropped from the Apprentice Program. Said information shall be furnished within twenty days from the date action is taken by the Joint Apprenticeship Committee. Said report shall contain the reason why the individual was dropped from the program and the steps taken by the Joint Apprenticeship Committee to retain the individual in the program. The report shall also include the training and employment history of the individual while he was in the program. The Joint Apprenticeship Committee shall furnish the names of all non-white apprentices who leave the program other than by action of the JAC. Such report shall contain the reason the apprentice has left the program if known by the JAC. Said information shall be furnished within twenty-days from the time the JAC is notified that the apprentice has left the program.

40. All records and lists required to be compiled by this Program shall be maintained for ten years and shall be made available for inspection and copying by the parties and the Administrator on reasonable notice during regular business hours or at other mutually convenient time without further order of the court.

## Advertising and Publicity

41. The parties shall use their best efforts to disseminate accurate information to the non-white community of opportunities within Local 28 and the Local 28 apprentice program.

42. Prior to each "hands-on" journeyman's test and apprentice entrance test at a time to be selected by the Administrator to insure full coverage and effectiveness, Local 28 (in the case of the "hands-on" journeyman's examination) and JAC (in the case of apprentice entrance tests) shall undertake a program of advertising and publicity, under the overall supervision of the Administrator, designed to inform the non-white

community in New York City of the date, location, and nature of such examinations, the qualifications therefor and the opportunities available upon successful completion of the test. These campaigns may include print and electronic media, dissemination of material to community, government and minority organizations. The City of New York may provide space and opportunities for such publicity.

43. By March 1, 1976 Local 28 and JAC shall provide to the Administrator and the other parties a written plan of an effective general publicity campaign designed to inform the non-white community in New York City of non-discriminatory opportunities in Local 28 and the Local 28 apprentice program as provided in the Order and Judgment and this Program. The other parties shall have 30 days to comment upon the written plan and the Administrator, having considered all submissions, shall revise the plan if he deems necessary and shall order it into effect by May 1, 1976.

## Work Referral

44. The Administrator shall conduct a study of the present Local 28 work referral system as described in the written statement submitted pursuant to Paragraph 21(g) of the Order and Judgment. This study shall be completed by June 15, 1976 and the Administrator shall submit to the parties such recommendations he deems necessary to assure that non-whites do not bear a disproportionate share of unemployment.

## Resolution of Disputes

45. (a) The Administrator shall hear and determine all complaints concerning the operation of the Order and Judgment and this Program and shall decide any questions of interpretation and claims of violations of the Order and Judgment and the Program, acting either on his own initiative or at the request of any party herein or any interested person. All decisions of the Administrator shall be in writing and shall be appealable to the Court.

(b) Any party or any individual affected by this Program may make a complaint to the Administrator within thirty days after the situation complained of arises. The Administrator shall give the parties notice of such a complaint within five days and, where a hearing is in his discretion warranted, expeditiously schedule such hearing.

## General Provisions

46. The union and the JAC shall post conspicuous notices, in language and at locations approved by the Administrator, advising individuals of their rights under this Program within 60 days after the Program is approved by the Court.

47. Except as modified, changed or amended by the terms of this Program or order of the Administrator, Local 28 and JAC shall not

change, modify or amend any aspect of the operation or content of the Apprentice Program, or the conditions or terms upon which an individual shall become a member of the Apprentice Program of Local 28 or entitled to work within the jurisdiction of Local 28.

48. At any time, any of the parties herein may apply to the Administrator and then to the Court for the purpose of seeking additional orders to insure the full and effective implementation of the terms and intent of this Program.

Dated: New York, New York

October 7, 1975

(s) David Raff
DAVID RAFF, ESQ.
Administrator

SO ORDERED

U. S. D. J.

Date:

## APPENDIX A

New York State Division of Employment (Department of Labor)

Department of Employment of the City of New York

Bureau of Labor Services of the City of New York

Recruitment and Training Program, Inc.

Fight Back

Asian Americans for Equal Employment

Black Economic Survival

Regional Neighborhood Manpower Service Centers of New York City

New York City Board of Education (Public High School and Evening Trade Division)

Williamsburg Coalition

New York Urban League

National Association for the Advancement of Colored People

Puerto Rican Community Development Project

National Association for Puerto Rican Civil Rights

Citywide Coalition of Black, Hispanic, and Asians in Construction

New York Project Equality

Commonwealth of Puerto Rico

Opportunities Industrialization Center of New York, Inc.

Bedford-Stuyvesant Restoration Corp.

New York City Human Rights Commission*
New York State Division of Human Rights*

OBJECTIONS OF NEW YORK CITY

October 10, 1975
BY HAND

Hon. Henry F. Werker
United States District Judge
United States Court House
Foley Square
New York, New York 10007

RE: E.E.O.C. and City of New York
v.
Local 28 Et al, 71 Civ. 2877 (HFW)

Dear Judge Werker:

In accordance with the schedule established by Mr. Raff in the referenced case, the City hereby sets forth its objections to the proposed Affirmative Action Program as submitted by the Administrator.

1. Paragraph 2:

The City proposes that all pensioners be considered as union members for purposes of measuring compliance with the Program's goals for non-whites and not merely those pensioners who worked in the previous three year period. The union estimates there are currently 753 pensioners, one of whom is believed to be non-white.

Pensioners have the right to vote at union meetings, including election meetings. They thereby have an impact upon the selection of union leadership and the determination of union policy. While they are not fined for failure to vote in a union election, as are non-pensioner members, their vote carries as much weight as that of other members. Moreover, union policy is not made only at election meetings. Mr. Bogen indicated, for example, that he was required to obtain membership approval for commencing the advertising campaign ordered by the Court. Further, it is common knowledge that "voluntary" assessments for legal fees, political endorsements and contributions, and similar matters, are voted on at union meetings. In addition, testimony at the trial reflected that a myriad of Executive Board proposals require ratification by a vote of the membership. This right of participation laudable as it is, necessarily dilutes the impact of the non-whites upon union policy. These considerations, as well as the right of pensioners to rejoin the active work force, requires that this group as a whole be considered "members" against which the achievement of goals is to be measured.

Therefore, the City proposes that the words "who have been employed as sheet metal workers within the last three years" be deleted.

* Send notices of exams, but no bulk application

2. Paragraph 10:

The City proposes that an additional sentence be added after the unnumbered paragraph at the top of page 8, as follows:

"Recently registered" means that the apprentice class in which the person was registered at the time he left the program, has not yet been graduated.

3. Paragraph 17:

The payment of $100 toward the initiation fee plus three months dues (currently $20 per month) places an untold burden upon non-whites who, as the Court found, have long been denied union admission and, therefore, work opportunity. This is a particular hardship since the $160 is required to be paid before the individual has earned any wages. The City was intimately involved in the recruitment of applicants for the October 11 test through the Recruitment and Training Program, Inc., a nationally recognized minority organization pre-eminent in the field of construction trades recruitment and funded by the United States Department of Labor for this purpose. Seventeen non-white individuals required R.T.P. grants to cover the $25 (non-fundable) filing fee. However, such grants are problematical when the amount is of the magnitude of $160, and many applicants who were discouraged from even applying because of the $25 fee will be lost to the Program by the prospect of having to lay out such a large amount of money (See attached Roffle affidavit).

Since the proposed program delays for only 30 days a final determination by the Administrator, the City believes that ¼ of the current initiation fee, or $56, plus one month's dues in advance is all that should be required. We therefore propose changing "$100 and three months dues" to "$56 and one month's dues" which represents a major commitment for a non-white who has spent enough time in the trade to qualify as a journeyman but for the first time is being given the opportunity to join the union.

4. Paragraph 30:

The City strongly objects to the omission in this paragraph of a floor on the non-white to white ratio which the parties (or the Administrator) will establish. There must be a minimum ration below which there is no discretion, else the subject will be a matter of debate each year, leading to objections, motions and appeals and consequent delays in the implementation of the Program. A floor is established for the ratio of admission of journeymen (paragraphs 7 and 14) and should similarly be established for apprentices.

Further, the City objects to the language limiting the percentage of non-white apprentices to 60% of the total apprentice program and 70% of any class or term. The apprentice program will be a major source of entry to the union for non-whites. There are eight apprentice classes and it is anticipated that in the early stages of the Program the non-whites will be more heavily represented in the early grades than the later grades. It is conceivable that any given class might have to be non-white in greater percentages than those proposed, particularly if there is a deficit in the goals of the previous period. Moreover, the apprenticeship program was 100% white for over 50 years; it is difficult to justify an objection to an occasional predominantly non-white class following this history of total exclusion. In addition, the City believes it inappropriate for an affirmative action program which is premised on findings of discrimination against non-whites to contain quantitative maximums on the relief afforded them.

The City therefore proposes that paragraph 30 be amended to delete the last sentence and to insert a new sentence after the first sentence, as follows:

"This ratio will be established with the purpose of fairly implementing the interim and final goals set forth in Paragraphs 1 and 2 but in no event shall said ratio be less than one-to-one".

5. Paragraph 32:

The City rejects the proposal that the cost of physical examination must be borne by successful applicants. This is a dramatic departure from previous practice of the JAC, which heretofore paid the costs of the physical exam. It would be most ironic if, as a result of civil rights litigation, apprentices were for the first time required to pay for their own physical examination, and this on top of a 50% increase in the filing fee over previous years. While the physical examination certainly produces a social benefit, in this case it is primarily for the benefit of the JAC which should, as in the past, bear the cost.

Moreover, JAC will require the examination to be taken at a designated private examining service which will charge $34 per applicant. JAC utilizes this service because it tests for drug presence as well as offering what JAC believes to be a quality physical. There has been no showing by JAC that a similar examination is not available at a lesser cost. In fact, recent inquiry made by the City through R.T.P. has ascertained the availability of quality physicals with a drug-presence component at a substantially lower cost. (See attached Ross affidavit) Moreover, the applicant should be free to be examined by any licensed physician so long as the examination establishes his physical fitness for sheet metal work and to obtain that service at a cost that is not pre-established by the JAC's arrangement with a private concern.

The City proposes, therefore, that the second sentence of paragraph 32 be amended so that "JAC" is substituted for "successful applicants". In the alternative, the City proposes a new second sentence, as follows:

"Successful applicants must produce proof satisfactory to the JAC of a recent medical examination establishing their physical fitness for sheet metal work and containing a statement

as to the presence or absence of drugs. A successful applicant electing to utilize a JAC-recommended medical facility may do so at no charge to the applicant."

6. Paragraph 36:

The City believes that this provision is inappropriate for inclusion in an affirmative action program. The JAC is free to take any actions it is empowered to take and this Program does not preclude such actions. We note that a similar provision included in the last previous draft, relating to procedures established by paragraph 16, has been omitted by the Administrator in this proposal. We believe that paragraph 36 was included by inadvertence and, in any event, has no place in this Program.

7. Paragraph 39(d):

The City feels that it is necessary that JAC make diligent efforts to locate non-white apprentices who leave the program by other than action of JAC. Our experience in other construction trades indicates the existence of harassment of non-whites by fellow employees, which has led qualified men to leave the trade. Further, misunderstandings and failure of communication is a common problem. The City Commission on Human Rights has found that exit interviews where possible, are a valuable technique for avoiding such difficulties. In any event, the information derived from this type of follow up can be of great value to JAC in minimizing turnover and in assuring the most effective administration of the apprentice program. Moreover, Mr. Rothberg has indicated that efforts are, in fact, made to contact these individuals. It should be no burden to record these efforts and their results. We propose replacement of the words "if known by JAC" with "as ascertained by an exit interview diligently attempted."

8. Paragraph 45 (a):

The City proposes the deletion of paragraph 45(a) and the substitution of the following:

"The Administrator shall make final determinations in the event of a dispute relating to the operation of the Order and Judgment and of this Program, arising between the parties, between an individual and the union, between an individual and the JAC, and between an individual and a contractor. His authority shall include, but not be limited to the resolution of disputes regarding:

(i) maintenance, availability and production of documents;

(ii) frequency of the apprentice or journeyman's tests required under this Program;

(iii) the ratio of non-whites to whites for entry into the union and apprenticeship program;

(iv) amendment of the Program;

(v) work referrals, including but not limited to the failure of the union to refer a non-white, the failure of a contractor to accept a non-white referral or direct application for employment when there are job openings, and the layoff of any non-white workers out of job seniority for any reason save good cause shown;

(vi) the validity and/or administration of a journeyman or apprentice test;

(vii) eligibility to take a journeyman or apprentice test, and/or refusal of appropriate appointment as a journeyman or apprentice;

(viii) amount and terms of payment of an initiation fee;

(ix) back pay claims."

While the above, at first blush, appears redundant of the Order, it should be noted that the injunctive provisions of the Order are phrased as negative prohibitions. We believe it important to establish affirmatively what is only implied in the Order concerning the Administrator's authority to monitor all practices affecting the treatment of non-whites and the equitable distribution of work opportunities. For example, paragraph 44 of the Program, absent the language proposed above, could be read to preclude the Administrator from hearing complaints of unfair treatment of non-whites in work referral for the first year of the Program.

9. Appendix A:

The New York City Board of Education should be asterisked as "information only", since it is not a manpower source. Also, both the New York State and the United States Department of Labor, Bureau of Apprenticeship Training, should be added to the list, each with an asterisk, as appropriate agencies to receive notices of examinations. The New York State Division of Employment (Department of Labor) is incorrectly titled. It should be changed to read "New York State Department of Labor, Division of Employment".

Respectfully submitted,
W. BERNARD RICHLAND
CORPORATION COUNSEL
by· (s) Beverly Gross
Beverly Gross
Assistant Corporation Counsel

CC: BY HAND

David Raff, Esq.
Taggart D. Adams, Esq.
Dominick Tuminaro, Esq.
William Rothberg, Esq.
Sol Bogen, Esq.

REPLY OF E. E. O. C.

October 15, 1975

The Honorable Henry F. Werker
United States District Judge
Southern District of New York
United States Courthouse
Foley Square
New York, New York 10007

Re: EEOC v. Local 28
71 Civ. 2877 (HFW)

Dear Judge Werker:

This letter will respond to the objections submitted by Local Union 28 and the City of New York to the proposed Affirmative Action Program ("AAP"). This office has not received any objections from Mr. Rothberg, co-counsel to JAC and counsel for the Contractors Association.

### Local 28 Objections

Objection No. 1. The language objected to in Paragraph 1 is directed toward assuring that non-whites share equitably in opportunities for employment. That was, and is, the purpose of this lawsuit. The language is prospective and neither it nor the AAP as a whole should be limited to the specifics which may or may not be in the "record". The proposed language does not guarantee that all non-whites will be employed for an equal number of hours as whites, but it seeks a goal that opportunities for such employment will be equitably shared. Local 28's proposed language which is applicable only to undefined "current depressed conditions" is too narrow.

Objection No. 2. The establishment of interim goals is authorized by ¶¶ 11 and 14(e) of the Order and Judgment entered in this action on September 2, 1975 ("Order and Judgment"). The interim percentages are well-considered and moderate. Including apprentices, the union now has a non-white percentage of approximately 5%. In the first three years of the Program this percentage is to be increased by 11% and in the last three years by 13%. The largest increases are called for in the first year (from 5% to 10%) and in the sixth and last year (24% to 29%). The larger increase in the first year is based upon the fact that the present manpower level in the apprentice program is extraordinarily low and a larger number of non-whites should be entering the union through the journeyman's test and the four years experience requirement (see discussion infra).

The definition of pensioners was left for formulation in the Program (¶ 11, Order & Judgment). We believe the formulation contained in the proposal before Your Honor is a fair compromise reasonably calculated to attain the purpose sought. Initially, it should be noted that this definition affects only the calculation of the interim and final goals. We believe it would be unfair to include all pensioners in the calculation since many might not have been part of an active work force for many years and may no longer even reside in the area. However, as pointed out by the City of New York, these pensioners are voting members of the union and have the power to affect union policies and programs. Furthermore, pensioners can become part of the active work force at will. Therefore, we believe the three year definition which reduces the number of pensioners calculated in the percentage by 70% is fair.

Objection No. 3. The provision making membership in the union available to individuals with experience in the industry is a necessary and viable admission procedure which is authorized by Paragraph 22 of the Order and Judgment. The criteria set out in Paragraph 22 for implementing the provisions contained therein include:

a) furthering the goal of achieving non-white membership of 29% in Local 28;

b) restoring non-whites to positions which would have been available absent discrimination;

c) other relevant circumstances.

We believe that the parties and the Administrator have fully considered the criteria at the numerous and lengthy conferences held during the development of the AAP. We see the rationale for the inclusion of an experience avenue as being an additional means of entry into the union of qualified non-whites in order to reach the 29% goal. We do not believe that the only way to test qualifications is through a "hands-on" test. In our view, four years of sheet-metal experience, as reviewed by a qualified board of examiners, is a reasonable means of qualification. Furthermore, such experience indicates an exposure to and genuine interest in the trade. It may also mean that such persons have indeed been subject to past discriminatory practices on the part of Local 28 or the JAC.

The proposed three member examining board is a compromise. Originally it was proposed that the board consist of representatives of Local 28, the Contractors, and the Administrator. When the Contractors objected to participating in such a program, a representative of the plaintiffs was substituted. In this regard, we do not think that the subjective evaluation of a sheetmetal project should be left entirely to the discretion of the defendant union. See Opinion, p. 480 and n. 16.

In Objection 3C Local 28 again raises the difference between construction sheetmetal and other sheetmetal. This was effectively disposed of by the Court in its Opinion at pp. 482–484.

In Objection 3D Local 28 confuses the means of developing a "relevant labor force" for the purposes of establishing a goal percentage with an implied residence requirement. Such a requirement limited to New York City would be illogical in the face of the fact that many present Local 28 officers and members live outside the

city. We believe the 60-day requirement is ample protection against the feared "influx".

Local 28's Objection 3E seems misdirected. The parties and the Administrator have been careful to assure that avenues of entry to immediate union membership be opened only to qualified persons. The age 26 itself does not seem to be a prerequisite for a qualified sheetmetal worker. Under Local 28's suggestion a person with four year's experience would still have to join the apprentice program.

We accept the proposal contained in Objection 3F.

Objection No. 4. In our letter of October 10, we outlined the objections of the EEOC to Paragraphs 33–36 of the AAP; however, we noted our support for the general concept. The parties. and the Administrator gave careful consideration to this concept before its adoption. Essentially, we believe that prior experience in sheetmetal work (though not enough to immediately qualify an individual for journeyman status) is indicative of interest and possible past discrimination and should be accorded appropriate weight. The advanced apprentice concept is founded on a strong belief that the apprentice program is a valuable and legitimate means of assuring entry into the union. We do not propose to bypass it. Rather we seek to measure an applicant's relevant experience and place those who do not require the first term apprentice training in an upper term.

We agree with the Objection 4D.

Objection No. 5. On the whole we think this objection is mooted by the fact that only 36 persons (17 non-white) passed the journeyman's test on October 11, 1975.

Objection No. 6. We do not accept Local 28's unsupported "estimate" of $40–50,000 as the cost of conducting the recent journeyman's test. Whatever the actual cost of that test, we also expect that the arrangements and advertising for a second journeyman's test will be far less involved and expensive. A regular schedule of journeyman's tests has merit and should be authorized. The proposed AAP provides adequate flexibility for timing the journeyman's tests according to needs.

Objection No. 7. Previously discussed. See Local 28 Objection No. 3, supra.

Objection No. 8. We agree that proposed Paragraph 11 omits certain necessary provisions. The last two lines of ¶ 11(a) should read:

"Opportunity Commission) record of convictions, citizenship or alien status, length of residence, and previous sheet metal experience"

Objection No. 9. There is no persuasive reason behind the argument that the applicants should fully subsidize the cost of the journeyman's test. An application fee in excess of $25.00 would seriously reduce the number of non-whites' applications. See City of New York letter of October 10 and enclosure.

Objection No. 10. See comments on Local 28's Objection No. 3, supra.

Objection No. 11. The paragraph objected to is, very simply, an essential part of an AAP. To say that we do not know the numbers is to state the obvious. To employ that fact as a reason for not developing a Program is to ignore the reason for such a Program. Local 28 would prefer day-to-day negotiations. The EEOC, realizing that amendments are always possible, and often the wisest way to deal with problems in the future, prefers not to negotiate daily but to set some concrete guidelines which can be amended if and when a need to do so has been demonstrated.

Objection No. 12. Objection 12A. is based on previous objections already discussed. Objection 12B is accepted.

Objection No. 13. We believe that the optional deferral program is an essential element of the Program because it provides persons eligible for union membership with a reasonable degree of flexibility in timing their entry into the union. Journeyman's tests occur when the parties and the Administrator decide they should occur; that time may not coincide with a person's individual circumstances. Since union membership is not a guarantee of employment, we believe that an eligible applicant should be entitled to arrange his entry into the union with a minimum disruption to his own life. In this regard, it should be noted that Local 28 has not shown that this option will in any way prejudice the union or its members.

The deferral option is not available to those who seek admission on the basis of experience since they may seek admission at any time.

Objection No. 14. Paragraphs 22 and 30 of the AAP establish two essential foundations of the AAP. First, the apprentice program will be the main source for non-white entry into the union. Second, the apprentice program should not be an all-minority program. Assuming a 3–2 non-white to white ratio (we prefer a 1–1 ratio) 780 non-whites will have entered apprenticeship status by July 1, 1981. This number by itself will be insufficient to reach a 29% non-white goal by 1981 even assuming a union attrition rate of 100 per year. Thus we are relying on journeyman's tests and the experience avenue of entry to reach the required goal. A further reduction in the minimum number of apprentices would increase the necessary reliance on these other avenues of entry. Given the limited number of experienced non-white sheetmetal workers in New York City this reliance would be unwise.

The EEOC submits that the apprentice program which has historically suffered an attrition rate of approximately 25% can handle the number of apprentices required by the AAP. This fact has been confirmed by the employer members of the JAC.

Objection No. 15. The provisions contained in Paragraph 23 are designed to provide adequate

flexibility so that apprentices can enjoy the fullest possible employment. If, as we believe, the apprentice program is to be the most important avenue of entry to union membership it should provide the greatest possible opportunities for employment to its members.

Objection No. 16. The substance of Objection 16(a) has been previously discussed. We accept Objection 16(b).

Objection No. 17. See our comments to the City's Objection No. 5.

Objection No. 18. We agree.

Objection No. 19. The position of the EEOC is that the establishment of an appropriate ratio should be done before the scores on the tests are known. This would eliminate any appearance of impropriety in establishing the ratio.

Objection No. 20. The establishment of two lists is essential to identifying and granting an admission preference to non-whites. Such lists, of course, do not alter the scores of the applicants.

Objection No. 21. Local 28's suggested limitation of the recordkeeping requirements to requests or inquiries made in person or in writing is unnecessarily restrictive. To the extent that other types of contacts are made with Local 28 they should be recorded. Obviously Local 28 can only record the information it receives. With regard to Objections 21D and E these requirements cover requests for permits or other general requests and they should be retained.

The three month requirement is generally part of Paragraph 21 of the Order and Judgment.

Objection No. 22. We agree with this objection.

#### City of New York's Objections

Objection No. 1. See our comments to Local 28's Objection No. 2.

Objection No. 2. We do not oppose this suggestion although we think this definition might be left flexible.

Objection No. 3. The AAP provision was the product of compromise among the parties. While granting the force of the City's argument, we feel that the AAP provision is equitable.

Objection No. 4. We believe that the circumstances should dictate the ratio and there is no need for a floor.

Objection No. 5. The AAP provision in question was the product of compromise. The EEOC suggested that in order to reduce the fee charged to all applicants the physical examination fee should be paid by those who have scored high enough to be admitted into the program. JAC originally proposed a fee of $27.00 per applicant. Through suggestions like the above we have reduced it to $15.00. We believe the provision is reasonable.

Objection No. 6. Paragraph 36, while unnecessary, is acceptable to the EEOC.

Objection No. 7. We believe the AAP provision is acceptable.

Objection No. 8. In light of the provisions of the Order and Judgment we think the City's objection is unnecessary.

Objection No. 9. This objection and proposal is acceptable.

Very truly yours,

PAUL J. CURRAN
United States Attorney

By: (s) Taggart D. Adams
TAGGART D. ADAMS
Assistant United States Attorney
Telephone No.: (212) 791–0051

cc: David A. Raff
Room 220
49–51 Chambers Street
New York, New York

Sol Bogen
One Penn Plaza
New York, New York

Rosenthal & Goldhaber
44 Court Street
Brooklyn, New York
Att.: William Rothberg

cc: W. Bernard Richland
Corporation Counsel
Municipal Building
New York, New York
Att.: Beverly Gross

Louis Lefkowitz
Attorney General
Two World Trade Center
New York, New York
Att.: Dominick Tuminaro

REPLY OF JAC

October 14, 1975

The Honorable Henry F. Werker
United States District Judge
Southern District of New York
United States Courthouse
Foley Square
New York, New York 10007

Re: EEOC vs. Local 28
71 Civ. 2877

Dear Judge Werker:

I write to set forth comments on behalf of my client to the objections interposed by the City of New York to the Affirmative Action Plan submitted by the Administrator.

Paragraph 30—There is no need to establish a minimum ratio. This paragraph clearly sets

forth the procedure wherein it allows the Administrator to establish the ratio if the parties cannot agree. There need not be a particular ratio established as a minimum in advance. There are many factors which must be considered, such as the attrition rate of Local 28, the number of minorities who enter journeyman status through the examination, etc. Before a ratio can be determined which would best implement the goals of the Affirmative Action Program, it is best to evaluate these factors on a regular and continuing basis rather than set a minimum ratio.

I would support the comments of the United States Attorney in connection with the second aspect of this paragraph, wherein he proposes additional language clarifying the purpose of the paragraph.

Paragraph 32—A physical examination is an important requirement for entering the sheet metal trade. Apprentices work at great heights in high rise constructions, with power tools and machinery, and with fellow workers. Any disabilities which are not detected could seriously endanger the apprentice as well as his fellow worker. It is for this reason that the JAC requires a thorough physical examination by a competent health organization. We have worked with Executive Health, Inc. who have met the needs and requirements of our industry in this regard.

We do not look to have the cost become a barrier for admission to the JAC and this was so indicated by the JAC in discussions with the parties and the Administrator in connection with the development of the program. We stated that any applicant who was not able to pay the physical examination fee at the time the examination is given, could have said payment deferred. In practice, in this situation, the JAC would pay the fee for such applicant and would have the applicant reimburse the JAC over a period of time after the applicant has commenced employment. We do not see this as any hardship or burden.

We are all well aware of the deficiency in medical care available to the poor and would strongly question the thoroughness of a physical examination for which there is only a $3.00 fee. Accordingly, it is important that the JAC have control over the extent of the physical examination and would be opposed to having applicants provide various and sundry certificates.

Paragraph 36—We would object to the deletion of this paragraph from the Program. Its inclusion clarifies an area and avoids potential conflict in the future.

Paragraph 39 (d)—We feel that the language of the Plan as proposed by the Administrator is more than adequate to meet the needs of the Plaintiff. Practice has shown that most apprentices leave the program without giving any notice, either to the JAC or their employer. The JAC becomes aware of such action only when notified that the apprentice has not reported to work for some period of time. Attempts then made by the JAC to locate the apprentice have generally been futile. To impose an affirmative burden on the JAC to conduct exit interviews where practices indicated, this would not be possible, and would serve no useful purpose.

Paragraph 45 (a)—I would strongly oppose the language proposed by the City in this regard. The Administrator's language is broad and all encompassing and gives him the authority to decide any questions of interpretation and claims of violations of the order, judgment and program. It further sets forth that he can act on his own initiative or at the request of any party or interested person. It would seem that this language would more than meet the needs of the City.

More specifically, the City includes in subparagraph V, an item which is not part of many of the aforementioned documents, namely the establishment of job seniority. This goes well beyond the scope of the aforementioned documents. The employers, as party defendants, have an obligation to see that the minorities do not bear a disproportionate burden of the unemployment. This need not be done through a system of job seniority which has never been the practice in the industry.

It would also seem that enumeration of specific items could be construed to limit the authority of the Administrator wherein the general language as submitted by the Administrator would be all encompassing.

I have no objection to comment # 3 as submitted by the United States Attorney which concerns itself with the program for advanced apprentices.

Very truly yours,

(s) William Rothberg
William Rothberg

ph

c.c. David Raff, Esq.
Taggart D. Adams, Esq.
Dominick Tuminaro, Esq.
Sol Bogen, Esq.
Beverly Gross, Esq.

REPLY OF NEW YORK CITY

October 15, 1975

Hon. Henry F. Werker
United States District Judge
United States Court House
Foley Square
New York, New York 10007

Re: E.E.O.C. and City of New York
v.
Local 28 71 Civ. 2877 (HFW)

Dear Judge Werker:

In accordance with the schedule established by Mr. Raff, this letter constitutes the City's reply to the objections raised by the United States and Local 28 to the Administrator's proposed Affirmative Action Program:

## 1. E.E.O.C.'s objections:

a) We agree with the proposal that there be a refund of dues to conditional members who do not become regular members. However, dues refunds should only be required for months in which the conditional member did not work. Moreover, any portion of the initiation fee paid during conditional membership by an individual who is unable to become a regular member should also be refunded, if the individual did not commence work.

Therefore we propose the following language to be added at the end of Paragraph 17:

"If a conditional member is terminated without becoming a regular journeyman member of Local 28 he shall be entitled to a return of any dues paid in advance for any month in which he was not employed and, if he was not employed during his conditional membership, he shall also be entitled to a return of any payment made toward the initiation fee."

b) Paragraphs 33 through 36 as submitted by the Administrator reflect a program worked out between the City and counsel for the employers. The purpose is to avoid the necessity for testing applicants for advanced standing who have more than one year experience as determined by JAC's Training Coordinator. It was agreed between the employers and the City, and E.E.O.C.'s proposal also recognizes, that testing of these individuals is unnecessary. The purpose of sharing non-white apprentice appointments between advanced and entry-level applicants is to avoid the devisiveness and conflict that might arise if there were no fixed system for admitting apprentice applicants who have more than one year experience and who therefore can become journeymen in less than four years. The City is aware of large numbers who may be qualified by experience to be immediately placed with advanced standing, as was done under the 1974 interim orders of Judge Gurfein, including individuals who fail to qualify as full journeymen on the October 11 examination. The placement of such individuals should be specifically provided for in the Program.

It should be noted that Paragraph 35(a) does not contemplate or permit the admission of a lower-ranking non-white over a higher ranked non-white. Indeed, the opposite is provided but possibly requires clarification, which could

be accomplished by inserting the words "in accordance with Paragraph 31(b)" after the words "acceptance into the apprenticeship program" on line 5 of Paragraph 35(a).

## 2. Local 28's objections:

a) Objection # 1: Title VII is an equal employment opportunity statute and the effectiveness of the program herein will ultimately be measured by reference to the equitable sharing by non-whites of employment opportunities available to Local 28 members. The union proposal does not express the purposes either of this suit or of the Program ordered by the Court to be established.

b) Objection # 2:

A. Paragraphs 11 and 14(e) of the Court's Order and Judgment specifically provide for the establishment of interim goals to assure "regular and substantial" annual progress toward the final goals of 29%.

B. Local 28, which has virtually excluded non-whites, should be required to make a dramatic showing of the reversal of historic patterns in the beginning years of this Program. Non-whites should be in a position to compete for available employment by being admitted to membership in annual percentages that reflect an equitable opportunity to an equitable share of the work that exists. Lesser percentages than those proposed will unreasonably reduce the potential for minority employment, unfairly continue the preference given white members, and make unlikely the attainment of the long range-goal of this Program.

C. The City's proposal is stated in our proposal of October 10.

c) Objection # 3:

A. The provision for admission on the basis of four years' experience is necessary to be included in the Program from the outset to obviate continual amendment. It should be noted that the timing and conditions of admission are left to the Administrator. Since less than 100 minority individuals took the October 11th test, this vehicle for admission must appear in the Program so that it can be readily utilized.

B. The precedent for a tri-partite Examining Board is firmly established (e. g., _Rios_ v. _Local 638_) and, we believe, is absolutely necessary, based upon the miniscule number of minority individuals in the union. An impartial Board will insure an objective evaluation of an individual's qualifications, and the existence of such a Board will aid to preserve the integrity of the Court's Order and Judgment.

D. It is inconsistent to impose a New York City residency requirement on incoming members where none exists for present

members, many of whom, in fact, do not reside in the City.

E. A survey made and reported on by the City in the course of the meetings of the parties reveals that minimum age requirements do not exist in the vast majority of building trades. The ability to perform journeyman's work is the essential criterion. The age "22" takes into account that apprentices may commence the apprenticeship program at age 18 and become journeymen four years later.

d) Objection # 4;

A. We note here that Local 28 advocates the deferral of each proposed system of admission until the results are known of the others, thus assuring the non-implementation of any. It is not premature to establish a program of admission to apprenticeship with advanced standing for non-whites, because the pool of qualified minority journeymen is limited. Therefore, the apprenticeship program will provide the major route for participation by non-white individuals, and there is a need to immediately accommodate those who should not be required to spend four more years achieving journeyman status when they already have previous trade experience. Further, since Mayoral Executive Orders require the employment of minority individuals as "trainees", the implementation of a Program for advanced apprentices may avoid the kind of situation which led to the contempt proceedings in this case in 1974.

B. It is unnecessary to subject to an aptitude test individuals who have established to the satisfaction of the Training Coordinator that they possess more than one year's experience in the trade.

C. Since the total number of apprentices is not "entirely unknown at this time" (see Paragraph 22 of Administrator's proposal), it is possible, practical and desirable to provide for the inclusion of specific proportions of advanced apprentices within the total of non-white apprentices to be admitted.

e) Objection # 5: Without getting on the Local 28 merry-go-round as to whether the journeymen's admissions should be deferred until the apprentice results are known, and vice versa, Local 28's comments are no longer valid since it is now known that less than 100 non-white individuals took the October 11th test and those successful is expected to be less.

f) Objection # 6: According to preliminary reports, only about sixteen minority individuals who took the October 11th test· received a passing grade. This small number of new minority journeymen will have no impact on the membership or employment profile of Local 28 members, particularly since more white individuals passed the test than did minority individuals. There is a clear need for journeyman's tests to be conducted at least once a year in order to maximize the flow of qualified minority journeymen into the union. With adequate lead time, which we did not have for the October 11th test, publicity and other costs could be sharply reduced. Figures estimated by Local 28 are questionable.

g) Objection # 8: The application form submitted by Local 28 was adopted for the October 11th test only and should not now be adopted as a standardized form for future tests. It is unduly long and burdensome (i. e., medical information unnecessary because medical certificate is required) and the general information more properly belongs in a separate fact sheet reflecting current circumstances (as is being done by JAC for the December test). Local 28's standard application form was never this detailed in prior years, and new application forms should include only that information determined by the parties or the Administrator to be relevant at the time used.

h) Objection # 10: See comment (c) above.

It is important that the minority community perceive the entire testing process as impartial. A union-only Examining Board creates a contrary appearance and, thus, a negative testing environment for non-whites.

i) Objection # 11: As stated in the City's letter of October 10th, a minimum ratio must be established in the Program else the subject will be a matter of debate each year, leading to objections, motions and appeals and consequent delay. Given the results of the October 11th test, in which more whites than minorities were passed, such minimums are clearly essential to assure the admission of a maximum of qualified minorities.

j) Objection # 12:

A. The application of paragraphs 16 and 17 of the Administrator's proposal will, in fact, only to journeymen admitted with four year's experience and to advanced apprentices after these methods of entry are approved by the Court. Paragraph 22(d) of the Order and Judgment specifically applies paragraphs 16 and 17 of the Program to these two groups of incoming journeymen.

B. We believe such provision is inappropriate for inclusion in an affirmative action program and, in any event, the Executive Board may take this action with or without such provision.

k) Objection # 13: It should be made clear at the outset that the Program contemplates the utilization of every available method permit-

ted under the Order and Judgment by which the entry of non-whites to the union can be expedited. It is far better to include all these provisions at the outset than to constantly attempt to amend the Program.

l) Objection # 14: After the June, 1976 class graduates, there will be less than 100 apprentices of all races in the apprenticeship program. The number of apprentices to be admitted, i. e., 300 by June, 1976 and 200 per annum thereafter, will restore the apprenticeship program to approximately its traditional size. Local 28's objection erroneously states that deferring the decision as to numbers, until after the results are known, will permit such decision to be knowledgably made. However, the apprentice exam produces a ranked list only and so does not bear on the question of how many should be admitted to the apprentice program.

The thrust of Local 28's argument is that the number of apprentices should be decided by collective bargaining, which is subject to arbitration. Clearly, such a procedure is unacceptable as a Title VII remedy after an adjudication of discrimination. It also creates a monstrosity of overlapping jurisdiction of the arbitrator, the Administrator and the Court. Overwhelming Title VII precedent rejects such a mechanism.

m) Objection # 15:

A. The union's objection ignores the plain language of the Administrator's paragraph 23, which measures the ratio of employed apprentices to the aggregate of employed journeymen and not to site-by-site numbers.

B. Counsel for the employers confirmed at one of the drafting meetings that JAC's policy to place upper termers first and to lay them off last results in the placement of fewer apprentices than is possible if seniority amongst apprentices were not relied on. Since the lower grades are expected to reflect a larger number of minority apprentices than the upper grades, at least for the first years of this Program, it is obligatory to expand opportunities for them to receive the on-the-job training that constitutes the bulk of apprentice training. Rotation of apprentices is another device for expanding work opportunities, in which the employers also concur.

n) Objection # 19: The union correctly points out the inconsistency of procedures relating to the establishment of ratios, but proposes an inappropriate adjustment since the examination itself produces only a ranked list with no pass-fail cutoff. The decision as to ratios should, in all cases, be made prior to the giving of the examination in order to insure that it is made dispassionately to effectuate the Order and Judgment and to facilitate an intelligent recruitment campaign.

o) Objection # 20: It is impossible to grant the Court-ordered preference in favor of non-whites for admission into the apprenticeship program unless a method of racial identification and selection is established. Since the examination will produce a list of ranked candidates, from which a pre-determined number and ratio will be appointed, there is no reason to delay a determination of the selection method to be utilized.

p) Objection # 21:

F. and H. Objection 21 F is derived from the Order and Judgment paragraph 21(e)(xii), and its deletion would require modification of the Order. Moreover, the information is presently readily available, as each employer is required to furnish the various welfare funds with current data as to individual members employed and the number of hours worked. The union trustees have access to these records and it is not a substantial burden to copy and forward them. Sharing of this existing information is essential to a proper implementation of the Program. Quarterly reports, (Objection 21 H), as required by the Order, are necessary for most effective monitoring; semi-annual information will not be sufficiently timely.

Respectfully submitted,
W. BERNARD RICHLAND
Corporation Counsel

by: (s) Beverly Gross
Beverly Gross
Assistant Corporation Counsel

CC: BY HAND

Taggart B. Adams, Esq.
Dominick Tuminaro, Esq.
William Rothberg, Esq.
Sol Bogen, Esq.
David Raff, Esq.